RICHARDSON v RICHARDSON

Docket No. 62946. Submitted December 15, 1982, at Detroit.—Decided
   January 19, 1983.

Defendant, Bruce H. Richardson, was ordered by the Macomb
   Circuit Court to pay child support to plaintiff, Carol A. Richard-
   son, for the support of their daughter. Defendant discontinued
   making child support payments, instead paying the money into
   an escrow account which he had established. He claimed that
   he was justified in discontinuing support payment because
   plaintiff refused to permit him to visit their child. The court,
   Raymond R. Cashen, J., found defendant to be in contempt of
   court and ordered the defendant to pay the arrearages within
   10 days or spend 120 days in jail. Defendant appealed.

   1. Support payments may be suspended where a noncustodial
   parent is denied visitation rights, unless the suspension of
   those payments would adversely affect the children for whose
   benefit the payments are made. However, the record disclosed
   that defendant was not paying because he was dissatisfied with
   a court order allowing visitation outside the custodial home
   only if the child desired it. Termination or reduction of child
   support payments may not be used as a weapon to force a
   child's visitation. There is no constitutional right to be liked or
   loved. A father who has been granted visitation rights following
   a divorce must convince his daughter that she should visit him,
   but, if she refuses, there is no justification for a cutoff of child
   support or for relief from his support obligation.

   2. Defendant alleged that the Constitution of the United
   States permitted the court to order payment of child support
   only in gold and silver coin. The provision in the United States
   Constitution that "No State shall * * * make any Thing but

REFERENCES FOR POINTS IN HEADNOTES
[1, 2] 24 Am Jur 2d, Divorce and Separation § 870.
   Withholding or denying visitation rights for failure to make ali-
      mony or support payments. 51 ALR3d 520.
   Violation of custody or visitation provision of agreement or decree
      as affecting child support payment provision, and vice versa. 95
      ALR2d 118.
[3] 54 Am Jur 2d, Money § 22.

gold and silver Coin a Tender in Payment of Debts" was only intended to limit the states' ability to create a form of legal tender other than gold or silver coin. It does not preclude the state from requiring that payment of debts be made in any form of tender authorized by the federal government.

Affirmed.

1. PARENT AND CHILD — CHILD SUPPORT — VISITATION.

Support payments may be suspended where a noncustodial parent is denied visitation rights, unless the suspension of those payments would adversely affect the children for whose benefit the payments are made.

2. PARENT AND CHILD — CHILD SUPPORT — VISITATION.

Termination or reduction of child support payments may not be used as a weapon to force a child's visitation.

3. TENDER — STATE — CONSTITUTIONAL LAW.

The provision in the United States Constitution that "No State shall * * * make any Thing but gold and silver Coin a Tender in Payment of Debts" was only intended to limit the states' ability to create a form of legal tender other than gold or silver coin; it does not preclude the state from requiring that payment of debts be made in any form of tender authorized by the federal government (US Const, art I, § 10).

Bruce H. Richardson, *in propria persona.*

Before: DANHOF, C.J., and J. H. GILLIS and H. E. DEMING,* JJ.

DANHOF, C.J. Defendant appeals as of right from an order of the trial court entered February 16, 1982, adjudicating him in contempt of court for failure to make child support payments previously ordered by the court and ordering him to pay the arrearage within 10 days or to spend 120 days in jail.

Defendant discontinued making child support payments in October, 1981, instead paying the money into an escrow account which he had estab-

* Circuit judge, sitting on the Court of Appeals by assignment.

lished. He claimed that he was justified in discontinuing support payments because plaintiff refused to permit him to visit their child. The trial court ruled that defendant could not unilaterally terminate his obligation for support. The court ruled that, because no request had been made of the court to terminate or modify the child support order, defendant was bound to comply with that order and that his failure to do so warranted a finding of contempt.

The general rule in Michigan is that support payments may be suspended when the noncustodial parent is wrongfully denied visitation rights unless suspension of those payments would adversely affect the children for whose benefit the payments are made. *McLauchlin v McLauchlin,* 372 Mich 275, 277; 125 NW2d 867 (1964).

In the present case, the record does not support defendant's claim that plaintiff engaged in a course of conduct designed to frustrate his visitation rights. See *Chazen v Chazen,* 107 Mich App 485; 309 NW2d 612 (1981). On the contrary, it appears that the real reason defendant discontinued making support payments was because he was dissatisfied with an earlier order of the trial court which limited visitation in a manner with which he disagreed. That order provided that visitation was to take place in plaintiff's home. It was subsequently modified to permit outside visitation if the child agreed to the same. It appears that it was at the child's request that visitation was so limited. Although we sympathize with defendant's plight, we are compelled to follow the holding of another panel of this Court in *Henshaw v Henshaw,* 83 Mich App 68, 72-73; 268 NW2d 289 (1978):

"We hold that support payments may not be used as a weapon to force a child's visitation.

* * *

"Affection is bestowed, not bought. Family relations cannot be regulated by the clock. Obviously, any coerced companionship the defendant might compel by a cutoff of child support would be utterly devoid of the sentiments of filial love and respect whose encouragement furnished the only admissible ground for visitation in the first place."

The fact that his daughter did not care to see him was not sufficient justification for defendant to discontinue support.

We also find without merit defendant's claim that plaintiff agreed to waive these payments. We agree with the trial court that plaintiff's statement that she had adequate funds to provide for the child's needs until the custody dispute was resolved served only as an explanation concerning why she had failed to initiate these contempt proceedings. It was not intended as a waiver of the child's right to support.

Defendant's final claim is that he can only be required to tender payment of his child support obligation in the form of gold and silver coin currently in circulation. In support of his claim, defendant relies on US Const, art I, § 10, which provides in pertinent part:

"No State shall * * * make any Thing but gold and silver Coin a Tender in Payment of Debts."

In our opinion, the above-quoted provision was only intended to limit the states' ability to create a form of legal tender other than gold or silver coin. It was not intended to preclude the state from requiring that payment of debts be made in any form of tender authorized by the federal government.

US Const, art I, § 8, grants Congress the exclusive power to declare what shall be legal tender for the payment of all debts. In 31 USC 392, Congress has provided the following:

"All coins and currencies of the United States (including Federal Reserve notes and circulating notes of Federal Reserve banks and national banking associations), regardless of when coined or issued, shall be legal tender for all debts, public and private, public charges, taxes, duties, and dues."

Furthermore, 31 USC 463 provides:

"(a) Every provision contained in or made with respect to any obligation which purports to give the obligee a right to require payment in gold or a particular kind of coin or currency, or in an amount in money of the United States measured thereby, is declared to be against public policy; and no such provision shall be contained in or made with respect to any obligation hereafter incurred. Every obligation, heretofore or hereafter incurred, whether or not any such provision is contained therein or made with respect thereto, shall be discharged upon payment, dollar for dollar, in any coin or currency which at the time of payment is legal tender for public and private debts. Any such provision contained in any law authorizing obligations to be issued by or under authority of the United States, is hereby repealed, but the repeal of any such provision shall not invalidate any other provision or authority contained in such law.

"(b) As used in this section, the term 'obligation' means an obligation (including every obligation of and to the United States, excepting currency) payable in money of the United States; and the term 'coin or currency' means coin or currency of the United States, including Federal Reserve notes and circulating notes of Federal Reserve banks and national banking associations."

In *Norman v Baltimore & O R Co,* 294 US 240, 303; 55 S Ct 407; 79 L Ed 885 (1935), the United States Supreme Court held:

"The broad and comprehensive national authority over the subjects of revenue, finance, and currency is derived from the aggregate of the powers granted to the Congress, embracing the powers to lay and collect taxes, to borrow money, to regulate commerce with foreign nations and among the several states, to coin money, regulate the value thereof, and of foreign coin, and fix the standards of weights and measures, and the added express power 'to make all laws which shall be necessary and proper for carrying into execution' the other enumerated powers. *Juilliard v Greenman,* 110 US 421, 439, 440; 4 S Ct 122; 28 L Ed 204 (1884).

"The Constitution 'was designed to provide the same currency, having a uniform legal value in all the States.' It was for that reason that the power to regulate the value of money was conferred upon the federal government, while the same power, as well as the power to emit bills of credit, was withdrawn from the states. The states cannot declare what shall be money, or regulate its value. Whatever power there is over the currency is vested in the Congress."

See also *United States v Wangrud,* 533 F2d 495 (CA 9, 1976), *cert den* 429 US 818; 97 S Ct 64; 50 L Ed 2d 79 (1976).

In view of the foregoing, it is clear that the federal government is given the exclusive power to make legal tender and that the Supremacy Clause of the United States Constitution, US Const, art VI, requires the state to accept tender so made. For similar results in other jurisdictions see *Radue v Zanaty,* 293 Ala 585; 308 S2d 242 (1975); *Allen v Craig,* 1 Kan App 2d 301; 564 P2d 552 (1977); *Chermack v Bjornson,* 302 Minn 213; 223 NW2d 659 (1974); *Middlebrook v Mississippi State Tax Comm,* 387 S2d 726 (Miss, 1980); *Dorgan v Kouba,*

274 NW2d 167 (ND, 1978); *Leitch v State Dep't of Revenue,* 16 Or App 627; 519 P2d 1045 (1974); *Trohimovich v Director, Dep't of Labor & Industry,* 21 Wash App 243; 584 P2d 467 (1978). See also OAG, 1981-1982, No 5934 (July 15, 1981). Defendant's claim is rejected.

Defendant has also briefed an issue concerning an order issued January 11, 1982, which modified an earlier visitation order. No claim of appeal was filed from that order nor has defendant provided this Court with transcripts of hearings held with respect thereto. Therefore, that issue is not properly before this Court. GCR 1963, 803.1. If defendant desires to pursue that claim, he must apply for leave to appeal to this Court. GCR 1963, 803.3; *Queen Airmotive, Inc v Dep't of Treasury,* 105 Mich App 231, 239; 306 NW2d 461 (1981).

Affirmed.