JENNIFER J. APPERT v. ROBERT A. APPERT

No. 857DC1115

(Filed 1 April 1986)

1. **Appeal and Error § 6.2— child support conditioned upon visitation—order immediately appealable**

    An interlocutory order requiring that child support paid by defendant father be placed in escrow if either of the minor children failed or refused to abide by the visitation privileges allowed defendant affected a substantial right of plaintiff and was thus immediately appealable. N.C.G.S. §§ 1-277 and 7A-27.

2. **Divorce and Alimony § 24— child support—no authority to condition upon visitation**

    Trial judges do not have authority to condition the receipt or payment of child support upon compliance with court-ordered visitation. Therefore, the trial court erred in ordering that child support paid by defendant father be placed in escrow if either of the minor children failed or refused to abide by the visitation privilege allowed defendant.

---

Appert v. Appert

---

APPEAL by plaintiff from *Sumner, Judge*. Judgment entered 20 June 1985 in WILSON County District Court. Heard in the Court of Appeals 13 February 1986.

This is an appeal by the plaintiff mother from an order directing that support paid by the defendant father for the parties' children be placed in escrow in the event the minor children fail or refuse except for medical reasons to abide by the visitation privileges allowed defendant. The parties were married in 1967 and separated in December 1982. They are now divorced. Three children were born of the marriage: Amy Elizabeth Appert, born on 31 August 1969; Betsy Lynn Appert, born on 19 November 1971; and Gregory Cameron Appert, born on 10 December 1974. In July 1983, a consent judgment was entered based on a separation agreement and property settlement entered into by the parties. Pursuant to that agreement and the judgment entered thereon, plaintiff was awarded custody of the minor children, defendant was afforded certain visitation rights and defendant was directed to pay as support for the children $2,000 per month with such payments to continue until the youngest child reaches the age of eighteen.

Thereafter several orders were entered concerning defendant's visitation rights. In November 1983, an order was entered. on a motion made by defendant to determine his visitation rights and to have plaintiff held in contempt of court for interfering with his visitation privileges. The court found that on several occasions since the consent judgment had been entered, the parties' children had refused to visit with defendant on weekends which he had selected for visitation pursuant to the consent judgment; that plaintiff had done nothing to interfere with defendant's visitation privileges and had in fact actively encouraged the children to visit with their father; and that the children have a strong and loving relationship with their mother which might be damaged if they are forced by her to visit with their father. The court concluded that plaintiff was not in contempt of any court order and that the consent judgment afforded defendant reasonable visitation privileges.

Subsequently, defendant filed another motion to determine his visitation rights. Three orders were entered with respect to that motion in each of which the court set forth specific dates on

which defendant was to have visitation with the children. In September 1984, the matter came again before the court on a motion by defendant to enforce his visitation rights and on a motion by plaintiff to have defendant found in contempt of court for his failure to make payments for the children's medical treatment and tuition. The court denied plaintiff's motion, respecified the visitation rights afforded defendant and struck a provision in the parties' separation agreement whereby each child upon reaching the age of thirteen was given the right to determine whether he or she wanted to visit with defendant.

In April 1985, defendant filed a motion for an order terminating or substantially decreasing his child support obligation on the grounds the $2,000 per month payment was excessive and because he was not getting the full visitation which he had bargained for in agreeing to such amount as child support. Defendant also filed a motion to have his child support payments held in escrow "until the [p]laintiff insures his children to visit with him during his scheduled periods of visitation. . . ."

A hearing was held on defendant's motions and on a motion by plaintiff to have defendant held in contempt for his alleged failure to pay a tuition bill. The court heard testimony from both parties, the three children and other witnesses. By order entered 20 June 1985, the court found as follows in pertinent part:

> 7. That since about February 1985, the Defendant has not had the minor children visit with him, and there has been very little contact or communication between the Defendant and his children; that the Defendant on numerous occasions since that date has attempted to exercise his visitation rights . . ., but the children have failed and refused to visit with their father.

> . . .

> 10. That the minor children refused to go with their father after he filed the motion to stop support payments now pending in this Court and stated that he was taking them to Court and therefore, they were not going to visit him.

> . . .

13. That . . . the children testified that the Plaintiff . . . had encouraged them to visit with their father by telling them that they were free to call him any time they wanted as well as free to see him when they wanted, but that she had not ordered or directed them to do either of these.

. . .

17. The oldest child, Amy Appert, testified that she did not want to have any future relationship with her father. She appeared to be very anxious.

18. The middle child, Betsy Appert, testified that she was an obedient child and that she would visit her father if her mother insisted. . . . She testified she had a good time on the occasions she was with her father.

19. The youngest child, Gregory Appert, testified that he loved his father, and he liked being with his father, and he had never had any problems on the times he has been with his father on visitation.

20. . . . that the visitation afforded the Defendant in the original Separation Agreement and Consent Judgment and as amended by the September 25, 1984, order is fair and reasonable and affords the Defendant visitation . . . that he should have and is in best interest of the minor children.

21. That the Defendant presented evidence to show that he has a very good relationship with his children when they are with him; . . . and that [he] is a very loving and caring father who wants to spend as much time as possible with his minor children.

22. That the Plaintiff . . . testified that she has done everything possible to encourage the minor children to want to be with and visit their father, but the Court finds . . . that the children appear not to want to do anything to displease their mother. . . . Plaintiff has attempted to allow the minor children to decide if they wanted to have a relationship with the father. The Court finds that the attitude of the Plaintiff is harmful and detrimental to the minor children, and that she should take positive steps to encourage and insist that they have a relationship with their father.

23. . . . the Court feels the child support specified in the Consent Judgment is fair and reasonable and should not be reduced . . . . [N]o evidence was presented to show the defendant is in contempt of [c]ourt . . . .

24. That . . . the paramount issue in this action is the welfare of the minor children and to that extent, the minor children must have a good relationship with their father and the father have a good and loving relationship with his children, and that this Court must exercise its power to accomplish this end, and the prior orders in this action have attempted to create this better relationship, but have not accomplished same, and the Court is of the opinion that it must insist that both Plaintiff and Defendant do everything within their power to encourage and insist that the children have a good and loving relationship with both Plaintiff and Defendant and that as to the support payments, the Court finds . . . that the following is in the best interest of the minor children:

(a) The amount . . . that the Defendant is paying for the support of his minor children . . . should not be reduced.

(b) The support payments shall continue as set out in the prior orders, but in the event that the minor children fail or refuse to abide by the visitation privileges allowed the Defendant, then the future payments for the support and maintenance of the minor children will be placed in escrow with the Clerk of Superior Court and will remain there until further orders of the Court.

. . . .

25. That the purpose of the escrow provision as set out above is to advise both Plaintiff and Defendant that the children do not have the option to decide on visitation privileges but that both parties have a duty to actively encourage and insist on the exercising of the visitation privileges between the children and Defendant.

. . .

28. That the Court does find as a fact that the Plaintiff has not made a reasonable effort to improve the relationship

between the Defendant and his minor children, and this has had a direct effect on the childrens' [sic] failure to follow Court orders as to visitation privileges, and due to the above, the Defendant has had difficulty in establishing a parent-child relationship with his children.

. . .

32. That if any of the minor children refuse to allow Defendant to exercise [his] visitation privileges . . ., this will be grounds to escrow the support funds . . . .

The court concluded that defendant was not in contempt of court and denied plaintiff's motion, concluded that the amount of child support being paid by defendant should not be reduced and denied defendant's motion to reduce or terminate such payments and allowed defendant's motion to place the child support payments in escrow subject to the following terms:

a. The support payments shall continue as set out in the prior orders, but in the event that the minor children fail or refuse except for medical reasons to abide by the visitation privileges allowed the Defendant, the next monthly payment for the support and maintenance of the minor children will be placed in the escrow with the Clerk of Superior Court for Wilson County and remain there until further orders of this Court.

b. In the event of an emergency, if the monies are placed in escrow, the Plaintiff may apply to the undersigned Judge for disbursement of all or some of the funds to be used for the benefit of the minor children.

c. In the event the monies are placed in escrow, this process of placing money in escrow shall continue for a period of six months from the date of this order, at which time this Court will have a hearing as to the situation at that time.

The court noted that the references in its order to the "minor children" were meant to include only Betsy and Gregory Appert and not the oldest child, Amy. From the order entered 20 June 1985, plaintiff appealed.

*Rose, Jones, Rand & Orcutt, P.A., by Naomi E. Morris, Bobby F. Jones and William R. Rand, for plaintiff-appellant.*

*Connor, Bunn, Rogerson & Woodard, P.A., by James F. Rogerson and Allen G. Thomas, for defendant-appellee.*

WELLS, Judge.

[1] We must first determine whether plaintiff's appeal is premature. N.C. Gen. Stat. §§ 1-277 (1983) and 7A-27 (1981), taken together, provide that no appeal lies to an appellate court from an interlocutory order or ruling of the trial judge unless the ruling or order affects a substantial right claimed in the proceeding. *See Bailey v. Gooding,* 301 N.C. 205, 270 S.E. 2d 431 (1980); *Waters v. Personnel, Inc.,* 294 N.C. 200, 240 S.E. 2d 338 (1978). It is not disputed that the order in question is interlocutory; therefore, we need only determine whether it affects a substantial right so as to be immediately appealable. As our Supreme Court has recognized on more than one occasion, "the 'substantial right' test for appealability of interlocutory orders is more easily stated than applied." *Waters v. Personnel, Inc., supra; see also Bernick v. Jurden,* 306 N.C. 435, 293 S.E. 2d 405 (1982). "It is usually necessary to resolve the question in each case by considering the particular facts of that case and the procedural context in which the order from which appeal is sought was entered." *Bernick, supra.*

The order from which plaintiff has appealed clearly affects the right of the plaintiff to receive support on behalf of the minor children from the defendant on a monthly basis as needed and in the amount which has been found reasonably necessary for the support and maintenance of the children. We conclude that such right is a substantial one and that therefore the order in question is immediately appealable.

[2] The primary issue presented by this appeal is whether a trial judge has authority to condition a minor child's receipt of support paid by the noncustodial parent on compliance with court-ordered visitation allowed the noncustodial parent. By ordering that child support paid by defendant be placed in escrow if either of the minor children fail or refuse to abide by the visitation privileges allowed defendant, the court made the children's receipt of the support conditional upon compliance with the visitation ordered.

Under the 20 June 1985 order, if the children do not comply with the orders granting defendant visitation privileges by visiting with defendant at the times and places directed by the court, defendant's child support payments will be placed in escrow and thereby withheld from plaintiff and the children until such time as the court might decide to distribute it. The obvious purpose of this arrangement is to force the children and the plaintiff to comply with the orders granting defendant visitation rights. We conclude that trial judges in this State do not have authority to condition the receipt or payment of child support upon compliance with court-ordered visitation as done by the trial judge here and that therefore the order appealed from must be vacated to the extent the trial judge purported to exercise such authority.

It is well established that trial judges are vested with wide discretion in determining matters concerning child custody and support. *See, e.g., Griffin v. Griffin*, 237 N.C. 404, 75 S.E. 2d 133 (1953); *Warner v. Latimer*, 68 N.C. App. 170, 314 S.E. 2d 789 (1984); *Evans v. Craddock*, 61 N.C. App. 438, 300 S.E. 2d 908 (1983). The trial judge's discretion, however, can extend no further than the bounds of the authority vested in the trial judge. In proceedings involving the custody and support of a minor child, the trial judge is authorized to determine the party or parties to whom custody of the child shall be awarded, N.C. Gen. Stat. § 50-13.2 (1984), whether and to what extent a noncustodial person shall be allowed visitation privileges, G.S. § 50-13.2 and N.C. Gen. Stat. § 50-13.5 (1984), the amount of support necessary to meet the reasonable needs of the child, N.C. Gen. Stat. § 50-13.4 (1984), the extent to which the father and mother of the child shall be liable for such support, *id.*, whether attorney's fees shall be awarded to a party, N.C. Gen. Stat. § 50-13.6 (1984), whether an order for child custody or support shall be modified or vacated based on a change in circumstances, N.C. Gen. Stat. § 50-13.7 (1984), and certain other related matters. *See generally* N.C. Gen. Stat. §§ 50-13.1 through 50-13.9 (1984). In addition, trial judges have authority to enforce orders concerning child custody and support by the methods set forth in G.S. § 50-13.3 (custody orders) and G.S. § 50-13.4 (support orders).

By the order entered 20 June 1985, the trial judge here did not purport to modify or vacate the prior orders concerning the support or custody of the minor children based on a change in cir-

cumstances; rather, the judge sought to enforce the prior orders as they related to defendant's visitation rights by conditioning the children's receipt of the support paid by defendant on compliance with the visitation orders. The precise issue presented by this appeal has not previously been decided by the courts of this State. In *Laughridge v. Lovejoy*, 234 N.C. 663, 68 S.E. 2d 403 (1951), however, our Supreme Court stated that the general rule at that time seemed to be that:

> [W]here the wife is awarded the custody of the child and the father is given the right to visit it, and the order requires him to make periodic payments for the support of the child, the order for such support will not be construed as being conditioned on the father's right of visitation which he may claim has been denied him.

In so stating, the Court recognized with apparent approval that it was the general rule that the right to receive child support was independent of the noncustodial parent's right to visitation. For this reason, we find the Court's statement significant even though it was not essential to determination of the case.

Defendant cites *Mather v. Mather*, 70 N.C. App. 106, 318 S.E. 2d 548 (1984), as clear authority for the enforcement of visitation rights by the escrow arrangement utilized by the trial judge here. In *Mather*, the plaintiff mother, who had custody of the parties' minor children, allegedly removed the children surreptitiously from this State and concealed their location thereby willfully disobeying a court order which granted the defendant father visitation rights. Pursuant to a motion made by the defendant, an order was issued directing the plaintiff to appear and show cause why she should not be held in contempt of court. When the plaintiff failed to appear at the show cause hearing, the court issued an order for her arrest and relieved the defendant of his duty to make child support payments until a hearing could be held on the show cause order. The plaintiff appealed. This Court held that the plaintiff's surreptitious removal of the children from North Carolina and the effective proscription of the defendant's right to see his children constituted a sufficient change in circumstances to allow the court to temporarily relieve the defendant of his child support obligation as it did.

*Mather* is clearly distinguishable from the present case and is not controlling. The present case does not involve a temporary reduction of a parent's child support obligation based on a change in circumstances, nor does it involve the surreptitious removal of minor children from this State in alleged violation of a court order. We believe the holding in *Mather* is a limited one and find no basis for expanding that holding beyond the narrow circumstances presented in that case.

Currently, other jurisdictions are split on whether child support and visitation rights are interdependent and may be conditioned upon each other. *See* Annot., 95 A.L.R. 2d 118 (1964 and Later Case Service 1983 and Supp. 1985); Note, *Making Parents Behave: The Conditioning of Child Support and Visitation Rights*, 84 Colum. L. Rev. 1059 (1984). In some jurisdictions it has been held that these rights are interdependent and that courts may reduce, suspend or terminate the noncustodial parent's obligation to pay child support if or while the visitation rights of that parent are being wrongfully denied. *See, e.g., Richardson v. Richardson*, 122 Mich. App. 531, 332 N.W. 2d 524 (1983); *Giacopelli v. Giacopelli*, 82 A.D. 2d 806, 439 N.Y.S. 2d 211 (1981). *See also Cooper v. Cooper*, 59 Ill. App. 3d 457, 375 N.E. 2d 925 (1978); Annot., 95 A.L.R. 2d 118, *supra*; 24 Am. Jur. 2d, *Divorce and Separation* § 1080 (1983). Many of these jurisdictions only allow this if it appears that the welfare of the minor children will not be adversely or seriously affected by the reduction, suspension or termination of the support. *See, e.g., Richardson, supra. See also* Annot., 95 A.L.R. 2d 118, *supra* at § 7. At least two jurisdictions have enacted statutory provisions authorizing the termination or modification of the noncustodial parent's obligation to pay child support in the event visitation rights are denied. *See* Ohio Rev. Code Ann. § 3109.05 (Page Supp. 1984); Or. Rev. Stat. § 107.431 (1985).

In the vast majority of cases addressing whether a noncustodial parent is entitled to any relief from the obligation to pay child support because of the denial of the parent's visitation rights, the visitation rights were being denied or frustrated by the actions of the custodial parent. *See* Annot., 95 A.L.R. 2d 118, *supra*. Those jurisdictions which have allowed trial courts to alter the noncustodial parent's obligation to pay child support because of the denial of the parent's visitation rights or allowed trial courts to otherwise condition the receipt of child support upon

compliance with an order granting visitation rights have general-
ly done so on a ground which reflects the fact that it is the custo-
dial parent that is preventing visitation from taking place. *See,
e.g., Giacopelli v. Giacopelli, supra.* Grounds frequently asserted
by these courts as a basis for allowing such relief include the
following: (1) that the custodial parent should not be allowed to
enjoy the benefits of the support order while denying the visita-
tion rights of the other parent, (2) that the obligation to pay child
support and the obligation to permit visitation are dependent
obligations and (3) that such measure is necessary to coerce the
custodial parent's compliance with the visitation order. *Id. See
also* Note, 84 Colum. L. Rev. 1059 (1984), *supra*, and the cases
cited therein.

In other jurisdictions it has been held improper to suspend,
reduce or terminate the obligation to pay child support based on
the custodial parent's denial of the visitation rights of the non-
custodial parent. *See, e.g., Siegel v. Siegel,* 80 Ill. App. 3d 583, 400
N.E. 2d 6 (1979). *See also* Annot., 95 A.L.R. 2d 118, *supra.* Courts
so holding have reasoned that the welfare of the children is para-
mount and the children should not be deprived of support simply
because of the misconduct of the custodial parent. *See, e.g., Siegel
v. Siegel, supra.* Similar holdings have been based on the ground
that the duty to pay child support is independent of the duty to
permit visitation. *See, e.g., People ex rel. Winger v. Young,* 78 Ill.
App. 3d 512, 397 N.E. 2d 253 (1979). Courts have noted that the
appropriate means for enforcing visitation rights is by contempt
proceedings. *See, e.g., Winger v. Young, supra.*

Our research has disclosed only a few cases in which the
denial of the visitation rights was due to the refusal of the minor
child or children to visit with the noncustodial parent. Courts ad-
dressing this situation have also reached contrary results. *See*
Annot., 32 A.L.R. 3d 1055 (1970 and Supp. 1985). Some courts
have held that a noncustodial parent's obligation to pay child sup-
port may be suspended so long as the minor child or children re-
fuse, without justification, to visit the supporting parent. *See,
e.g., Snellings v. Snellings,* 272 Ala. 254, 130 So. 2d 363 (1961);
*Putnam v. Putnam,* 136 Fla. 220, 186 So. 517 (1939). The suspen-
sion of the child support payments was viewed by these courts as
a permissible device to compel the children to obey the decree
providing for visitation. *See Snellings, supra; Putnam, supra.* In

one case it was held that where the child unjustifiably refused to visit, call, write or even see the noncustodial parent, the child forfeited his right to support from that parent. *Barbara M. v. Harry M.*, 117 Misc. 2d 142, 458 N.Y.S. 2d 136 (1982). In other cases it was held that under the particular facts presented the minor child's refusal to visit or live with the divorced parent did not relieve the parent of his obligation to support the child. *Straver v. Straver*, 26 N.J. Misc. 218, 59 A. 2d 39 (1948); *Yarborough v. Yarborough*, 168 S.C. 46, 166 S.E. 877 (1932), *reversed on other grounds*, 290 U.S. 202, 78 L.Ed. 269, 54 S.Ct. 181 (1933).

In at least two jurisdictions, however, it has been held that a noncustodial parent's obligation to pay child support may not be modified or terminated based on the denial of the parent's visitation rights regardless of whether the denial resulted from the actions of the custodial parent or the minor child. *See Hester v. Hester*, 663 P. 2d 727 (Okla. 1983); *Dooley v. Dooley*, 30 Or. App. 989, 569 P. 2d 627 (1977). In both *Hester* and *Dooley*, the appellate court asserted as grounds for its holding that the welfare of the children is paramount and that the duty of a noncustodial parent to support his or her children is not dependent upon the opportunity of the parent to exercise visitation privileges. As further support for its holding, the court in *Hester* stated:

> Whether the children refuse to see the non-custodial parent, either on their own volition or as a result of the explicit or implicit urging of the custodial parent, there is no justification in subjecting the children to possible hardship because of the interference of the custodial parent. . . . The duties of support and visitation are not interdependent and should be separately enforced.
>
> . . . The custodial parent's misconduct cannot destroy the child's right to support, nor may child support payments be used as a weapon to force a child's visitation with a noncustodial parent. The duty to support one's minor child is a continuing obligation. Entitlement to child support is not contingent upon visitation rights.

We find *Hester* and *Dooley* particularly on point with the present case. In those cases, the denial of the noncustodial parent's visitation rights resulted from the refusal of the children to visit the noncustodial parent; however, it appeared the chil-

dren's refusal may have been due to the influence or conduct of the custodial parent. Similarly, in the present case, the denial of defendant's visitation rights resulted directly from the refusal of the minor children to visit defendant; however, it is clear the trial judge believed the children's refusal resulted at least in part from the influence and conduct of their mother.

Those jurisdictions which have chosen to view child support and visitation rights as interdependent and sanctioned the termination or suspension of child support payments based on the denial of the noncustodial parent's visitation rights have been criticized. *See* Note, 84 Colum. L. Rev. 1059 (1984), *supra*. It has been argued that conditioning the receipt of child support upon compliance with an order providing for visitation fails to take into account adequately the relevant interests at stake, particularly the interest of the child involved; that it may be injurious to the interests of the child and the State; that it may be ineffectual in bringing about compliance; and that there are alternative sanctions available to courts which are more desirable and appropriate to remedy the problem of wrongful denial of visitation rights. *Id.*

In determining which view is most consonant with the law of this State, we find the following well-established law particularly instructive: It has long been the law of this State that the welfare or best interest of the child is the paramount consideration which guides our courts in determining matters concerning the custody of a minor child. *See* 3 Lee, *N.C. Family Law* § 224 (1981). All other factors, including visitation rights of a parent, will be deferred or subordinated to this consideration. *Griffith v. Griffith*, 240 N.C. 271, 81 S.E. 2d 918 (1954); *see also In re Custody of Stancil*, 10 N.C. App. 545, 179 S.E. 2d 844 (1971). Visitation rights should not be permitted to jeopardize the best interest and welfare of the child. *Swicegood v. Swicegood*, 270 N.C. 278, 154 S.E. 2d 324 (1967); *In re Custody of Stancil, supra.* As this Court stated in *Stancil, supra, quoting* 2 Nelson, *Divorce and Annulment*, § 15.26 (2d ed. 1961): "The right of visitation is an important, natural and legal right, although it is not an absolute right, but is one which must yield to the good of the child."

After considering the arguments on both sides of this issue, the case law in this State and in other jurisdictions, we conclude

that conditioning the payment or receipt of child support upon compliance with an order granting the noncustodial parent visitation privileges as a means of enforcing the visitation order is inherently detrimental to the best interest of the minor child and is therefore contrary to the law of this State. It must be remembered that the primary reason for visitation is the benefit to be derived by the child from associating with the noncustodial parent. *See Porter v. Porter*, 25 Ohio St. 2d 123, 267 N.E. 2d 299 (1971); *Block v. Block*, 15 Wis. 2d 291, 112 N.W. 2d 923 (1961). When visitation does not occur, it is the child that suffers the injury, as well, of course, as the noncustodial parent. Withholding support payments from the child because visitation has not taken place as ordered can only exacerbate the child's confusion, uncertainty and tension. Since it has been determined that the support payments are necessary to provide for the child's needs, the withholding of the payments is necessarily harmful to the child. Note, *Visitation Rights: Providing Adequate Protection for the Noncustodial Parent*, 3 Cardozo L. Rev. 431 (1982). Withholding support payments for this reason may not only threaten the child's financial security, it may also damage the child's relationship with the custodial parent and may have significant psychological repercussions for the child. Note, 84 Colum. L. Rev. 1059 (1984), *supra*. As one example of the latter, conditioning the receipt of child support upon compliance with court-ordered visitation, referred to by one court as a "money-for-visits solution," may lead to an unfortunate mental association. *Id.* That is, the child will realize that visitation with the noncustodial parent is merely a way to ensure that the support payments keep coming and may come to believe that his or her relationship with that parent is financially rather than emotionally based. *Id.*

We believe the child has suffered injury enough by the fact of the parents' divorce and by the failure of visitation to take place. We find no justification for further compounding the child's injury by withholding support payments from the child.

Withholding support payments results in injury to the minor child regardless of whether visitation does not take place because of the refusal of the child to visit with the noncustodial parent or because of the interference of the custodial parent. It is because of this unjustifiable injury to the child that we find the escrow arrangement ordered by the trial judge objectionable. This type of

arrangement is even more objectionable, however, when visitation does not take place because of the misconduct of the custodial parent. In that situation, the child is penalized even though he or she is not the wrongdoing party. As one court stated in addressing this situation: "[T]here is no moral justification in subjecting innocent children to hardships because of the misdeeds of their parents." *Dooley v. Dooley, supra.* We agree. Child support payments are for the maintenance of the children's welfare and are not a lever upon which divorced adults can be made to resolve their differences over visitation. *Rathmall v. Gardner*, 105 Ill. App. 3d 986, 434 N.E. 2d 1156 (1982). In this State, the duty of a parent to support his or her children is not dependent upon the granting of visitation rights, nor is it dependent upon the parent's opportunity to exercise visitation rights. We conclude that visitation and child support rights are independent rights accruing primarily to the benefit of the minor child and that one is not, and may not be made, contingent upon the other.

Not only do we find the escrow arrangement ordered by the trial judge to be inherently detrimental to the best interest of the children, but also that the effectiveness of this remedy in coercing compliance with visitation orders is questionable. We do not believe the threat of economic deprivation will achieve the result ultimately desired by the noncustodial parent—to obtain the love and respect of the children. As one court stated in criticism of the use of support payments as a means of forcing a child's visitation: "Affection is bestowed, not bought. . . . Obviously, any coerced companionship the defendant might compel by a cutoff of child support would be utterly devoid of the sentiments of filial love and respect whose encouragement furnished the only admissible ground for visitation in the first place." *Henshaw v. Henshaw*, 83 Mich. App. 68, 268 N.W. 2d 289 (1978).

Lastly, we note that there are other means available to trial judges to enforce visitation rights which have been sanctioned by our Legislature and which provide an appropriate remedy for the problem presented. Trial judges in this State have authority to enforce orders providing for visitation by the methods set forth in G.S. § 50-13.3, that is, by contempt proceedings and by injunction. *See Clark v. Clark*, 294 N.C. 554, 243 S.E. 2d 129 (1978) ("Visitation privileges are but a lesser degree of custody."). Of these two methods, contempt proceedings are the means most

likely to be useful in enforcing visitation rights. Although contempt proceedings may not provide an adequate remedy in every case, they are an appropriate remedy and one which our trial judges are statutorily authorized to use, unlike the escrow arrangement utilized by the trial judge in the present case.

We conclude that the trial judge here acted beyond the bounds of his authority and contrary to the law of this State when he ordered that child support paid by defendant be placed in escrow in the event the minor children fail or refuse to abide by the visitation privileges allowed defendant. Accordingly, we vacate the 20 June 1985 order to the extent it allows defendant's motion to hold the child support payments in escrow. The remainder of the 20 June 1985 order is affirmed.

Vacated in part; affirmed in part.

Judges WHICHARD and COZORT concur.