AUDREY DALE McGEE, PLAINTIFF, BUNCOMBE COUNTY CHILD SUPPORT ENFORCEMENT AGENCY, STATE OF NORTH CAROLINA, ET. AL., PLAINTIFF/INTERVENORS v. WALTER T. McGEE, DEFENDANT

No. 9328DC224

(Filed 21 February 1995)

**1. Divorce and Separation § 430 (NCI4th)— child support— modification of foreign decree**

Upon registration of a foreign child support order pursuant to N.C.G.S. § 52A-24, the courts of this state have subject matter jurisdiction to modify the foreign support order on the basis of changed circumstances.

**Am Jur 2d, Divorce and Separation §§ 1078 et seq.**

**2. Divorce and Separation § 445 (NCI4th)— modification of child support—changed circumstances—involuntary income reduction**

A significant involuntary decrease in a child support obligor's income satisfies the necessary showing of substantial changed circumstances which justifies a reduction in the support obligation without any findings of any change affecting the child's needs.

**Am Jur 2d, Divorce and Separation §§ 1078 et seq.**

**Change in financial condition or needs of parents or children as ground for modification of decree for child support payments. 89 ALR2d 7.**

**3. Divorce and Alimony § 445 (NCI4th)— modification of child support—changed circumstances—involuntary income reduction—sufficiency of findings**

The trial court's findings were sufficient to support its conclusion of changed circumstances warranting a reduction in

defendant father's child support obligation based on a substantial involuntary reduction of income without any findings concerning the actual past expenditures of the children where the court found that the father's income had decreased from $24,000 per month in 1986 to $2,083 per month at the time of hearing; the father had been involuntarily terminated from his employment in late 1987 or early 1988 as a result of a substantial decline in the time-share resort industry with which he was associated; he has continuously sought employment since being terminated, but those efforts have been impaired due to criminal nonsupport actions instituted in Florida and in North Carolina; and his estate has been substantially depleted.

**Am Jur 2d, Divorce and Separation §§ 1078 et seq.**

**Change in financial condition or needs of parents or children as ground for modification of decree for child support payments. 89 ALR2d 7.**

4. **Divorce and Separation § 392 (NCI4th)— child support— modification of order—temporary support—stipulation of arrearage amount**

The trial court did not err by finding that the temporary child support amounts defendant father was ordered to pay during the pendency of this action to modify a child support order constituted the total child support obligation during such time, even though the father's payment under the temporary order was $150 per week while his payment under the prior order was $150 per week per child, where the parties entered into a stipulation as to the amount of the father's child support arrearage that included the period of time during which the temporary child support order was in effect.

**Am Jur 2d, Divorce and Separation §§ 1035 et seq.**

**Excessiveness or adequacy of money awarded as child support. 27 ALR4th 864.**

5. **Parent and Child § 45 (NCI4th)— child support—mandatory income withholding—applicability to arrearages**

Statutory provisions for mandatory income withholding for child support when services are being provided by a child support

McGEE v. McGEE

[118 N.C. App. 19 (1995)]

enforcement agency (IV-D cases) apply with equal force to orders for current support and orders directing payment of an arrearage.

**Am Jur 2d, Parent and Child §§ 69 et seq.**

**6. Parent and Child § 47 (NCI4th)— child support—failure to order mandatory income withholding—moot question**

Where a child support enforcement agency was providing services to the mother, the trial court erred by allowing the father's child support arrearages to be satisfied by two payments of $5,000 and $40,000 over a two-year period rather than requiring income withholding to ensure payment of the arrearage. However, the issue of the court's failure to impose income withholding has become moot where the deadlines for the payments have passed.

**Am Jur 2d, Parent and Child §§ 69 et seq.**

**7. Divorce and Separation § 385 (NCI4th)— child support not conditioned upon visitation**

The trial court's recommendation in a child support modification order that the father be allowed visitation with the children did not condition the receipt of child support upon visitation and was thus not improper.

**Am Jur 2d, Divorce and Separation §§ 1018 et seq.**

**Violation of custody or visitation provision of agreement or decree as affecting child support payment provision, and vice versa. 95 ALR2d 118.**

Appeal by plaintiff/intervenors from judgment entered 28 July 1992 by Judge Gary S. Cash in Buncombe County District Court. Heard in the Court of Appeals 8 December 1993.

*Attorney General Michael F. Easley, by Assistant Attorney General T. Byron Smith, for plaintiff-appellants.*

*Prince, Youngblood, Massagee & Jackson, by Sharon B. Alexander, and Mullinax & Alexander, by William M. Alexander, Jr. for defendant-appellee.*

JOHN, Judge.

Plaintiff/Intervenors (the State) appeal modification of a pre-existing Florida child support order. The State contends the trial

court erred by (1) failing to make findings of fact and conclusions of law regarding the needs of the minor children; (2) considering its temporary support order entered prior to the modification order as constituting. defendant's total support obligation during the pendency of this action; (3) failing to require defendant to liquidate support arrearage through periodic payments and to transfer certain stock within a reasonable time; and (4) intermingling the issues of visitation and support.

Pertinent facts and procedural information are as follows: Audrey Dale McGee (Audrey) and Walter T. McGee (Walter) were married 24 January 1966, separated 27 December 1984, and were divorced 27 April 1987 by order of the Florida court. In the divorce decree, Walter was directed *inter alia* to pay child support of $150.00 per week per child for the parties' four minor children.

In July 1987, Walter set up residence in Asheville, North Carolina. He subsequently filed an action in this State seeking to modify the Florida divorce decree with respect to alimony and child support (90 CVD 2775).

As a result of Audrey's receipt of public assistance, the State of Florida Department of Health and Rehabilitative Services caused Notice of Registration of a Foreign Support Order in North Carolina to be issued to Walter 26 February 1991 (91 CVD 737). *See* N.C. Gen. Stat. § 52A-24 *et. seq.* Florida records indicated Walter had accumulated "adjudicated" alimony and child support arrearage in the amount of approximately $212,574.50 as of 16 January 1991 and that his most recent payment was $390.00 on 25 June 1990.

On 22 April 1991, the North Carolina Department of Human Resources, Child Support Enforcement Section and the Buncombe County Child Support Enforcement Agency (the State) moved to intervene in case 91 CVD 737 and further moved that Walter be held in contempt for failing to comply with the Florida order. Case 90 CVD 2775 and case 91 CVD 737 were consolidated 12 June 1991 and a temporary support order was entered.

The matter came on for hearing 11 December 1992 before the Honorable Gary S. Cash, and the proceedings were reconvened 19 February to accommodate conclusion of the evidence. The trial court took the matter under advisement and on 28 July 1992 entered an order containing the following pertinent findings of fact:

13. The Defendant's income in 1986 was $24,000.00 per month, with the Defendant's living expenses being paid by his employer. This income was used by the Florida Court in determining the child support and alimony obligations of the Defendant in 1987. This income was earned by the Defendant's employment through a corporation known as McGee Collins Associates, which corporation sub-contracted the services of the Defendant in Europe in time-share development resorts. The time-share resort industry in which this Defendant was employed suffered a substantial decline in 1987 and years following, and the employment of this Defendant was involuntarily terminated in late 1987 or early 1988. The Defendant continued to have some income from his previous services, which income decreased over the next several years.

. . . .

19. The Defendant's current income at the time of trial is approximately $25,000.00 per year or $2,083.33 per month. From this income, Defendant must pay his reasonable living expenses.

. . . .

27. The Defendant has continuously sought gainful employment since the termination of his European employment. The Defendant's efforts to obtain employment have been adversely affected by felonious criminal non-support actions instituted by the Plaintiff against the Defendant, both in the State of Florida and in the State of North Carolina.

. . . .

39. There has been a substantial change of circumstances in the facts surrounding the parties, including both the ability of each parent to pay support and the reasonable needs of the minor children such as justifies this Court in entering an order modifying the child support provisions of the divorce judgment.

. . . .

41. The changes of circumstance which the Court finds, based upon the facts set forth above and produced at trial, are as follows:

(a) The current income of the Defendant has been decreased by $22,000.00 per month since the time of the original judgment.

. . . .

(c) The Defendant's estate has been substantially depleted.

(d) The Defendant has incurred indebtedness to his current wife in excess of $116,000.00, which indebtedness did not exist in 1987.

(e) The Defendant's current earned income is $2,083.33 per month and his earning capacity is $50,000.00 per year.

42. The Defendant, being unable to travel to the State of Florida, has not seen his minor children in five years. The Defendant has attempted to communicate with his children unsuccessfully, including having gifts sent by him to his children returned by the Plaintiff. The Defendant loves his minor children and desires to see his minor children.

The trial court thereupon entered conclusions of law as follows:

BASED UPON the foregoing findings of fact, the Court concludes the following as a matter of law:

1. The Defendant, Walter T. McGee, is in contempt of the Florida judgment for his wilful failure to comply with said judgment.

2. The Defendant is able to satisfy the currently existing arrearages [in] alimony by transfer of personal properties.

3. There has been a substantial change of circumstances in the facts surrounding these parties such as justifies this Court in concluding as a matter of law that the child support judgment should be modified.

. . . .

Based upon its findings and conclusions, the court ordered:

2. The Defendant is ordered to transfer all common stock which he owns in Collins Investments, Inc., free and clear of the current security interest held therein by his wife, Linda Rebol McGee, to the Plaintiff in full satisfaction of the periodic alimony arrearage of $180,000.00 as stated herein.

. . . .

5. That, in order for Defendant to satisfy his child support arrearage of $45,000.00, he shall pay said sum to Plaintiff through the Office of the Clerk of Superior Court in the following manner:

McGEE v. McGEE

[118 N.C. App. 19 (1995)]

Defendant shall pay $5,000.00 on the 1st day of October, 1992, and the remaining balance of $40,000.00 on the 1st day of October, 1994.

6. The temporary child support amounts which the Defendant was ordered to pay by this Court during the pendency of this action shall constitute the total child support obligation of the Defendant during the pendency of this action. If any arrearage exists in said temporary child support, the same shall be immediately satisfied by the Defendant.

. . . .

12. Though issues of custody and visitation are beyond the scope of this Court's authority to proceed, it is the belief of this Court that financial factors have prevented the Defendant, Walter T. McGee, from seeing his minor children for a period in excess of five years. In view of efforts made by the Defendant to support his children, particularly as the same shall be satisfied in compliance with this judgment, and further in view of the expressed love and affection of the Defendant for his minor children, it is the Court's recommendation to the Circuit Courts for the State of Florida that the Defendant be allowed to freely travel to and in the State of Florida and that he be allowed to see his minor children.

The State filed notice of appeal to this Court 31 July 1992.

I.

The primary focus of the State's first assignment of error is the contention that a child support modification order must include findings, based upon competent evidence, relative to the actual past expenses of the minor children. The absence of such findings in the order *sub judice*, the State insists, renders erroneous the trial court's conclusion that a substantial change of circumstances had occurred, and its order must be vacated. We disagree.

We begin by noting the State's argument in its brief does not conform to its assignments of error listed in the record on appeal which state:

1. The trial court erred in modifying the child support order because the needs of the minor children had not decreased, nor had Defendant's ability to pay decreased.

. . . .

4. The trial court's finding of fact to support its determination that there has been a change of circumstances is not supported by the evidence.

These assignments of error in actuality pertain to sufficiency of the evidence, and not sufficiency of the findings as argued in the State's brief. Our scope of review on appeal is limited to a consideration of those assignments of error set out in the record on appeal. N.C.R. App. P. 10(a). Upon careful review of the record, we find ample evidence to support the court's findings.

We nonetheless in our discretion also elect to consider the merits of the State's argument regarding sufficiency of the findings, *see* N.C.R. App. P. 2, in particular, whether the trial court herein was required to make findings concerning the past expenses of the minor children prior to entry of its conclusion that a substantial change of circumstances had occurred.

[1] Registration of a foreign support order pursuant to N.C. Gen. Stat. § 52A-24 (1992) *et. seq.* results in treatment of the order as if issued by a court of this State. N.C. Gen. Stat. § 52A-30 (1992). Following registration, the order may be modified pursuant to N.C. Gen. Stat. § 50-13.7(b) (1987) which states:

When an order for support of a minor child has been entered by a court of another state, a court of this State may, upon gaining jurisdiction, and upon a showing of changed circumstances, enter a new order for support which modifies or supersedes such order for support, . . . .

North Carolina courts are thus conferred subject matter jurisdiction to modify support orders entered in another state. *Morris v. Morris*, 91 N.C. App. 432, 434, 371 S.E.2d 756, 758 (1988).

The burden of demonstrating changed circumstances rests upon the moving party. *Davis v. Risley*, 104 N.C. App. 798, 800, 411 S.E.2d 171, 173 (1991). Once "the threshold issue of substantial change in circumstances has been shown" by a preponderance of the evidence, the trial court then "proceeds to follow the [North Carolina Child Support] Guidelines and to compute the appropriate amount of child support." *Id.* The Guidelines apply to modification of child support orders as well as to initial orders. *Greer v. Greer*, 101 N.C. App. 351, 354, 399 S.E.2d 399, 401 (1991) (citing 1989 N.C. Sess. Laws ch. 529, § 9). Thus modification of a child support order involves a two-step process. The court must first determine a substantial change of cir-

**McGEE v. McGEE**

[118 N.C. App. 19 (1995)]

cumstances has taken place; only then does it proceed to apply the Guidelines to calculate the applicable amount of support. *Davis*, 104 N.C. App. at 800, 411 S.E.2d at 173.

[2] The State relies upon *Fischell v. Rosenberg*, 90 N.C. App. 254, 257, 368 S.E.2d 11, 14 (1988), in asserting that evidence of "child-oriented expenses" must be presented and considered in the decision as to whether a substantial change of circumstances has occurred. However, it now appears settled that a significant involuntary decrease in a child support obligor's income satisfies the necessary showing even in the absence of any change affecting the child's needs. *Pittman v. Pittman*, 114 N.C. App. 808, 811, 443 S.E.2d 96, 97-98 (1994); *see also* C.P. Jhong, Annotation, *Change in financial condition or needs of parents or children as ground for modification of decree for child support payments*, 89 A.L.R.2d 7 (1963).

In *Pittman*, there was no evidence presented that the needs of the children had changed. Nonetheless, this Court held "a substantial and involuntary decrease in the income of a non-custodial parent [may], as a matter of law, constitute a substantial change of circumstances authorizing the court to modify a prior order by reducing child-support payments." *Pittman*, 114 N.C. App. at 810, 443 S.E.2d at 97; *see also Springs v. Springs*, 25 N.C. App. 615, 616, 214 S.E.2d 311, 312-13 (1975) (sufficient showing of changed circumstances to support child support reduction where obligor's net income decreased because of lowered V.A. benefits and added deductions for social security and income taxes, and where obligee's net income had increased), and *O'Neal v. Wynn*, 64 N.C. App. 149, 152, 306 S.E.2d 822, 823-24, *aff'd*, 310 N.C. 621, 313 S.E.2d 159 (1983) (determination of changed circumstances and reduction of child support affirmed absent change in children's needs where obligor's income decreased as a result of losing job and borrowing money to start new business).

This Court in *Pittman* further noted "that the ultimate objective in setting awards for child support is to secure support commensurate with the needs of the children and the ability of the [obligor] to meet the needs." *Pittman*, 114 N.C. App. at 810, 443 S.E.2d at 97 (citing *Gibson v. Gibson*, 24 N.C. App. 520, 211 S.E.2d 522 (1975)). However, we remanded the case for determination of whether defendant had undergone a substantial and involuntary decrease in income sufficient to warrant reduction of child support payments. (We point out that neither *Pittman* nor our decision herein affect established law that a change of circumstances sufficient to modify a

child support order may also be shown by a substantial increase in the children's needs, *Craig v. Kelley*, 89 N.C. App. 458, 462-63, 366 S.E.2d 249, 252 (1988), or by a substantial decrease therein, *Koufman v. Koufman*, 330 N.C. 93, 99, 408 S.E.2d 729, 732 (1991)).

[3] We therefore examine whether the trial court's findings in the case *sub judice* were sufficient under *Pittman* to uphold a determination of changed circumstances. The court's findings numbered 13, 19, 27, 39 and 41(a)(c)(d) and (e) quoted above bear upon this question. The court found therein that Walter's income had decreased from $24,000.00 per month in 1986 to $2083.33 per month at the time of hearing, that he had been involuntarily terminated in late 1987 or early 1988 from his employment with McGee Collins Associates as a result of substantial decline in the time-share resort industry with which he was associated, that he had continuously sought employment since being terminated, but that those efforts had been impaired due to criminal non-support actions instituted both in Florida and in North Carolina, and that his estate had been "substantially depleted." Thus, while the court failed to use sequentially the words "substantial involuntary reduction" in income, its findings as a whole and read *in pari materia* indisputably reflect precisely that.

We therefore hold, under *Pittman*, that the court's effective determination of a "substantial involuntary reduction" in Walter's income was adequate to support its conclusion that there had been a change of circumstances sufficient to warrant modification of the previous child support order. The trial court thus did not err in failing to make findings concerning the actual past expenditures of the minor children prior to reaching its change of circumstances decision.

## II.

[4] The State next maintains the trial court erred when it determined the 12 June 1991 temporary child support order constituted Walter's total child support obligation during the pendency of this action. The State points out Walter's payment under the temporary order was $150.00 per week while the Florida order required payments of $150.00 per week *per child*. Therefore, the argument continues, Walter owes the difference between the two orders because the Florida decree was not modified by the temporary order. This contention fails.

Regardless of whether the temporary order modified the existing order, we note the parties entered into a stipulation as to the amount of Walter's arrearage. As this Court has previously discussed:

> Courts in this State look with favor upon stipulations designed to simplify and shorten litigation. *Thomas v. Poole*, 54 N.C. App. 239, 282 S.E.2d 515 (1981), *disc. review denied*, 304 N.C. 733, 287 S.E.2d 902 (1982). Where stipulations have been entered of record and there is no contention that the attorney for either party was not authorized to enter into such stipulations, the parties are bound and cannot take a position inconsistent with their stipulations. *Id.*

*Bertie-Hertford Child Support ex. rel. Souza v. Barnes*, 80 N.C. App. 552, 553, 342 S.E.2d 579, 580 (1986).

The record discloses the parties stipulated before trial that on 19 February 1992 Walter's "current arrearage in child support and alimony payments" was in the amounts of $45,000.00 and $180,000.00 respectively. These stipulations were accepted by the trial court and entered into evidence. These totals included the period of time during which the temporary child support order was in effect. Accordingly, the parties are bound thereby, *id.*, and the State may not take a position in this Court contrary to its stance in the trial court. *See Akzona, Inc. v. Am. Credit Indem. Co.*, 71 N.C. App. 498, 507-08, 322 S.E.2d 623, 630 (1984) (citation omitted).

### III.

The State's next assignment of error concerns the manner in which the court permitted payment of defendant's child support and alimony arrearage. The State specifically finds error with that part of the court's order which, after finding Walter in contempt, allowed the child support arrearage to be satisfied by two payments of $5,000.00 and $40,000.00 over a two year period. Further, the State contends the court erred by not ordering Walter to transfer stock in satisfaction of his alimony arrearage within a reasonable time. For the reasons set forth, we believe the trial court erred by failing to direct income withholding to ensure payment of Walter's child support arrearage; however, the court's error has become moot.

### A.

Regarding the payment of child support arrearage, the trial court has broad discretion under N.C. Gen. Stat. § 50-13.4(e) (1987 and Cum. Supp. 1994), and it is not limited to directing any one designated

method of payment. *Griffin v. Griffin*, 103 N.C. App. 65, 66, 404 S.E.2d 478, 479 (1991). However, the court's discretion is curtailed to some degree in IV-D cases, that is, those cases "in which services . . . are being provided by a child support enforcement agency established pursuant to Title IV-D of the Social Security Act . . . ." N.C. Gen. Stat. § 110-129(7) (1991).

In the case *sub judice*, it is uncontroverted that the State of Florida Department of Heath and Rehabilitation Services, from whom Audrey was receiving public assistance, caused registration in our state of the Florida court order under which Walter's arrearage had accumulated. It is further uncontroverted that the State, through the Buncombe County Child Support Enforcement Agency, prosecuted that case, 91 CVD 737 herein, against Walter, which was consolidated by consent of the parties with case 90 CVD 2775 filed by Walter. Accordingly, the trial court's subsequent order was entered in a "IV-D case."

N.C. Gen. Stat. § 110-136.3 (1991), entitled "Income withholding procedures; applicability," read as follows at the time of the hearing herein:

(a) Required contents of support orders. All child support orders, civil or criminal, entered or modified in the State beginning October 1, 1989 *shall*:

. . .

(2a) In IV-D cases, include a provision ordering income withholding to take effect immediately;

. . .

(b) When obligor subject to withholding. (1) In IV-D cases in which a new or modified child support order is entered . . . an obligor is subject to income withholding *immediately* upon entry of the order. . . .

(emphasis added).

N.C. Gen. Stat. § 110-136.4 (1991), entitled "Implementation of withholding in IV-D cases," provided in pertinent part on the hearing date as follows:

(b) Immediate income withholding. When a new or modified child support order is entered, the district court judge *shall*, after hearing evidence regarding the obligor's disposable income, place the obligor under an order for immediate income withholding.

(emphasis added).

These provisions for income withholding establish no independent action, but are "merely a remedy to enforce an underlying [child support] order." *See Sampson Co. Child Support Enforcement ex rel. Bolton v. Bolton*, 93 N.C. App. 134, 138, 377 S.E.2d 88, 91 (1989). The purpose is "to assure 'that all children in the United States who are in need of assistance in securing financial support from their parents will receive assistance regardless of their circumstances.' " *Griffin*, 103 N.C. App. at 68, 404 S.E.2d at 480 (quoting S. Rep. No. 387, 98th Cong., 2d Sess., *reprinted in* 1984 U.S.C.C.A.N. 2397).

[5] In view of the foregoing stated purpose of our child support enforcement legislation, this Court in *Griffin* saw "no distinction between a parent who owes both arrearages and current support payments and one whose total support obligation consists of arrearages." *Id.* at 68, 404 S.E.2d at 480. We therefore hold that the above statutory provisions for mandatory income withholding in IV-D cases apply with equal force to orders for current support and to orders directing payment of arrearage.

[6] In the order under review, the court instructed defendant to make two separate payments to clear his child support arrearage, a $5,000.00 payment 1 October 1992 and "the remaining balance of $40,000.00" 1 October 1994. While we believe the mandatory statutory provisions applicable to IV-D cases cited above required the trial court to direct income withholding for purposes of satisfying this debt, we note the trial court's deadlines for Walter's payments have passed. The court's failure to impose income withholding thus has become moot. In the event the payments ordered have not been made at the time of certification of this opinion to the trial court, the State may then seek such remedies as are available at law.

B.

The State also asserts the court erred in not putting a reasonable time limit on the conveyance of stock in compensation of alimony arrearage. The State argues "[t]here is no time frame set on this transfer, and again allows defendant to further avoid his lawful duties," and asks this Court to order the transfer to take place immediately. Defendant responds by stating he "does not resist Plaintiff's request that his stock in Collins Investments, Inc. be immediately transferred," and "has no objection to this [C]ourt directing immediate transfer." Accordingly, we direct the trial court upon certification of

this opinion to enter an order providing for immediate transfer by Walter to Audrey of his Collins Investments, Inc. stock.

## IV.

[7] Finally, the State argues the trial court impermissibly intermingled the issues of child support and visitation by using the child support order to "bring pressure to bear on the McGee's [sic] to resolve their visitation problems—clearly beyond the scope of the trial court under North Carolina law."

The State is correct in its assertion that the duty to pay child support is wholly independent of the non-custodial parent's right to visitation. We have previously held that conditioning payment or receipt of child support upon allowance of visitation is contrary to the best interests of the children. *Appert v. Appert*, 80 N.C. App. 27, 41, 341 S.E.2d 342, 350 (1986); *Pifer v. Pifer*, 31 N.C. App. 486, 489, 229 S.E.2d 700, 703 (1976).

In *Appert*, the trial court ordered that:

> support payments shall continue . . . but in the event that the minor children fail or refuse except for medical reasons to abide by the visitation privileges allowed the Defendant, the next monthly payment for the support and maintenance of the minor children will be placed in the escrow with the Clerk of Superior Court . . . and remain there until further orders of this Court.

*Id.* at 32, 341 S.E.2d at 344-45. We rejected the court's "money-for-visits solution," *id.* at 40, 341 S.E.2d at 349, and concluded that "visitation and child support rights are independent rights accruing primarily to the benefit of the minor child and that one is not, and may not be made, contingent upon the other." *Id.* at 41, 341 S.E.2d at 350.

However, *Appert* is distinguishable from the case *sub judice*. Review of the language utilized by the trial court herein reveals no conditioning of the receipt of child support upon visitation. Rather, the court merely set forth its recommendation that visitation by Walter with the minor children be allowed. This was not inappropriate, particularly in the circumstance where Audrey was not in court and therefore was not available to be addressed personally. As the court imposed no direct economic deprivation tied to visitation, we find this assignment of error unfounded.

Affirmed.

Judges ORR and LEWIS concur.

Judge Orr concurred prior to 5 January 1995.