EVELYN CAROL S. HANCOCK, Plaintiff, v. CARY GLENN HANCOCK, Defendant

No. COA94-1415

(Filed 4 June 1996)

## 1. Contempt of Court § 39 (NCI4th)— civil contempt—appeal properly before Court of Appeals

Since the contempt order in this case allowed plaintiff to purge the contempt by delivering the parties' child over to defendant for his scheduled visitation and by turning over a coin collection to defendant or otherwise consenting to a search of her home, the contempt order was actually civil in nature even though the order stated that the court found plaintiff in criminal

HANCOCK v. HANCOCK

[122 N.C. App. 518 (1996)]

contempt, and the appeal was therefore properly before the Court of Appeals. N.C.G.S. §§ 5A-17, 5A-24.

**Am Jur 2d, Appellate Review §§ 216-218.**

**Appealability of acquittal from or dismissal of charge of contempt of court. 24 ALR3d 650.**

**Appealability of contempt adjudication or conviction. 33 ALR3d 448.**

**Contempt adjudication or conviction as subject to review, other than by appeal or writ of error. 33 ALR3d 589.**

2. **Divorce and Separation § 384 (NCI4th)— willful refusal to allow visitation—insufficiency of evidence**

The evidence was insufficient to support a finding that plaintiff willfully refused to allow defendant his visitation with the parties' child, and the trial court therefore erred in holding plaintiff in contempt, where there was no evidence that plaintiff acted purposefully and deliberately or with knowledge and stubborn resistance to prevent defendant's visitation with the child; she prepared the child to go, encouraged him to visit with his father, and told him he had to go; the child refused; and plaintiff did everything possible short of using physical force or a threat of punishment to make the child go with his father.

**Am Jur 2d, Divorce and Separation §§ 999, 1011.**

**Interference by custodian of child with noncustodial parent's visitation rights as ground for change of custody. 28 ALR4th 9.**

3. **Divorce and Separation § 384 (NCI4th)— visitation not prevented but not forced by custodial parent—order of forced visitation—insufficiency of findings**

Where the custodial parent did not prevent visitation but took no action to force visitation when the child refused to go, the proper method is for the noncustodial parent to ask the court to modify the order to compel visitation; however, the trial court's order in this case, though an attempt at an order of forced visitation because it sentenced plaintiff to jail but allowed her to purge herself of contempt by delivering the child over to defendant each and every time he was entitled to visitation, nevertheless failed

HANCOCK v. HANCOCK

[122 N.C. App. 518 (1996)]

because there were no findings that the incarceration of plaintiff was reasonably necessary to promote and protect the best interests of the child.

**Am Jur 2d, Divorce and Separation §§ 999, 1011.**

**Interference by custodian of child with noncustodial parent's visitation rights as ground for change of custody. 28 ALR4th 9.**

4. **Divorce and Separation § 41 (NCI4th)— failure to return coin collection—sufficiency of evidence to support finding of contempt**

The trial court did not err in finding plaintiff in contempt for violating a consent judgment concerning property distribution by failing to return all of a coin collection to defendant where there was evidence to support the court's finding that plaintiff produced only bits and pieces of the collection.

**Am Jur 2d, Divorce and Separation § 859.**

**Divorce: propriety of using contempt proceeding to enforce property settlement award or order. 72 ALR4th 298.**

5. **Judges, Justices, and Magistrates § 26 (NCI4th)— judge's statements to contemnor and child—no bias by judge**

There was no merit to plaintiff's contention that the contempt order should be reversed because of bias on the part of the trial judge where, at the close of all the evidence, the judge ordered the minor child to return to the front of the courtroom and accused him of being a "spoiled brat" and of manipulating his parents and sisters, gave plaintiff a tongue lashing about the child's manipulation and her failure to punish him, accused plaintiff of beating "this man (defendant) out of his coin collection," and stated his belief that defendant, a Methodist minister, would not lie about a valued coin collection, since trial judges are not barred from expressing their opinions in trials conducted without a jury; and the record showed that the trial judge based his opinions and remarks upon the evidence presented at trial.

**Am Jur 2d, Judges §§ 146-151, 170.**

**Disqualification of judge for bias against counsel for litigant. 23 ALR3d 1416.**

## HANCOCK v. HANCOCK

[122 N.C. App. 518 (1996)]

**Waiver or loss of right to disqualify judge by participation in proceedings—modern state civil cases. 24 ALR4th 870.**

**Disqualification of federal judge, under 28 USC sec. 144, for acts and conduct occurring in courtroom during trial or in ruling upon issues or questions involved. 2 ALR Fed. 917.**

Appeal by plaintiff from order entered 29 August 1994 by Judge William A. Christian in Lee County District Court. Heard in the Court of Appeals 28 September 1995.

As part of a divorce action, plaintiff-appellant Evelyn Hancock and defendant-appellee Cary Glenn Hancock entered into an agreement resolving all remaining matters in controversy concerning property distribution and custody of the couple's ten year-old minor son, Andrew. The trial court incorporated this agreement into a consent judgment filed 24 August 1993 in Lee County District Court. The judgment ordered, in part, that: "Defendant shall have as his sole and separate property the coin collection and computer;" and "Plaintiff shall have primary custody of their minor child, Andrew. Defendant shall have reasonable visitation privileges including specific visitations with his son, every other weekend, from 6:00 p.m. on Friday through 6:00 p.m. on Sunday . . . ."

When the defendant, who had relocated to Troy, North Carolina, arrived in Sanford on 18 March 1994 to take Andrew for his regularly scheduled visitation, the child refused to go with him. Instead, Andrew said he had plans to spend the weekend with his grandmother. Defendant testified he did not know whether plaintiff was home at the time. Two weeks later, on 1 April 1994, defendant again drove to Sanford to pick up his son for the weekend. Again, defendant was told Andrew did not wish to go with him.

Defendant also attempted to take Andrew for the weekend on Easter weekend, April 1994. Defendant was to be remarried on Easter Sunday and had planned for Andrew to be in the wedding. Andrew had been fitted for a tuxedo during his visitation with defendant the weekend of March 4th and his name was listed in the invitations, bulletins, *etc.* However, when defendant arrived to pick Andrew up on Good Friday, he was again told the child did not want to go. Defendant called the plaintiff before his next scheduled visitation on

HANCOCK v. HANCOCK

[122 N.C. App. 518 (1996)]

15 April 1994 and was told by plaintiff Andrew did not want to go, and therefore, defendant did not drive to Sanford.

On 26 April 1994, defendant filed a motion in the cause to hold plaintiff in contempt for violation of the consent judgment. Defendant accused plaintiff of willfully failing and refusing to abide by the terms of the judgment by refusing to allow defendant his scheduled visitation with Andrew and by failing to turn over the complete coin collection. After a hearing on 29 August 1994, the court entered an order holding plaintiff in contempt for failure to abide by the terms of the consent judgment and sentenced her to thirty days in custody. From the judgment of contempt, plaintiff appeals.

*Love & Love, P.A., by Jimmy L. Love, for plaintiff-appellant.*

*Staton, Perkinson, Doster, Post, Silverman & Adcock, by Norman C. Post, Jr., for defendant-appellee.*

McGEE, Judge.

[1] We first note that the contempt order states the court "concludes that Plaintiff is in willful, *criminal* contempt of this court" (emphasis added). Criminal contempt orders are properly appealed from district court to the superior court, not to the Court of Appeals. N.C. Gen. Stat. § 5A-17 (1986). However, in civil contempt matters, appeal is from the district court to this Court. N.C. Gen. Stat. § 5A-24 (1986). In *Bishop v. Bishop*, 90 N.C. App. 499, 369 S.E.2d 106 (1988), this Court held that the character of the relief is dispositive of the distinction between criminal and civil contempt, and where the relief is imprisonment, but the contemnor may avoid or terminate imprisonment by performing an act required by the court, then the contempt is civil in nature. *Bishop*, 90 N.C. App. at 505, 369 S.E.2d. at 109. Since the order in this case allows plaintiff to purge the contempt by delivering the child over to defendant for his scheduled visitation and by turning over the coin collection or otherwise consenting to a search of her home, the contempt order is actually civil in nature. Therefore, the appeal is properly before this Court.

## I. Visitation

[2] Plaintiff first argues there was insufficient evidence to support a finding that she willfully refused to allow defendant his visitation with the child. Plaintiff contends there must be a showing that the custodial parent deliberately interfered with or frustrated the non-custodial parent's visitation before the custodial parent's actions can

be considered willful. We agree and reverse this portion of the contempt order.

"In contempt proceedings[,] the judge's findings of fact are conclusive on appeal when supported by any competent evidence and are reviewable only for the purpose of passing on their sufficiency to warrant the judgment." *Clark v. Clark*, 294 N.C. 554, 571, 243 S.E.2d 129, 139 (1978). Although the statute governing civil contempt, N.C. Gen. Stat. § 5A-21 (1986), does not expressly require that a contemnor's conduct be willful, case law has interpreted the statute to require an element of willfulness. *Smith v. Smith*, 121 N.C. App. 334, 336, 465 S.E.2d 52, 53-54 (1996). The trial court found as a fact that "Plaintiff has willfully failed and refused to abide by the terms of the [consent judgment] . . . [b]ecause of Plaintiff's willful refusal to allow the minor child to visit with the Defendant and/or the Plaintiff's inaction in not requiring the minor child to visit the Defendant . . . ." Since a willful failure by plaintiff to abide by the consent judgment would support a finding of contempt in this case, we must review the record to determine if it contains competent evidence to support a finding of willfulness.

"Willful" has been defined as "disobedience 'which imports knowledge and a stubborn resistance,' and as 'something more than an intention to do a thing. It implies doing the act purposely and deliberately, indicating a purpose to do it, without authority—careless whether [the contemnor] has the right or not—in violation of law . . . .' " *Jones v. Jones*, 52 N.C. App. 104, 110, 278 S.E.2d 260, 264 (1981) (citations omitted). Willfulness "involves more than deliberation or conscious choice; it also imports a bad faith disregard for authority and the law." *Forte v. Forte*, 65 N.C. App. 615, 616, 309 S.E.2d 729, 730 (1983). Evidence which does not show a person to be guilty of "purposeful and deliberate acts" or guilty of "knowledge and stubborn resistance" is insufficient to support a finding of willfulness. *In re Dinsmore*, 36 N.C App. 720, 726, 245 S.E.2d 386, 389 (1978). Here, the record contains no evidence plaintiff acted with a bad faith disregard for the law by committing purposeful and deliberate acts or acted with knowledge and stubborn resistance in order to violate defendant's visitation rights.

Plaintiff, her daughter, and the minor child all testified that plaintiff encouraged the child to go on his scheduled visitations with defendant. Plaintiff testified: "I have had Andrew ready, I've had Andrew's things ready, I've told Andrew he had to go, I've put Andrew

outside so that [defendant] could get Andrew. I've even tried to stay inside so he would have a chance to get Andrew." When asked whether she had told her son he had to go visit his father, plaintiff replied: "I had told him he had to go . . . I told him to get in the car." On direct examination, the child testified as follows:

Q. Okay. Has your mother, at any time, told you not to go and be with your father?

A. No.

Q. Has she always encouraged you to go see your father?

A. Yes.

Q. Has she physically restrained you or told you not to go visit your father?

A. No. . . .

Q. Has your mother done anything to try to discourage your love for your father or discourage you visiting your father?

A. No.

The child also testified he loved his father and wished to spend time with him, but only if his father's second wife and her children would not be there. Upon cross-examination the child testified as follows:

Q. If [plaintiff] tells you to go visit with your father, are you going to do that?

A. I don't know.

Q. Well[,] has she told you to get in the car with your father and go home?

A. Yes.

Q. And you refused to do that?

A. Yes.

Q. Does she make you do it?

A. No. She tried to.

Q. How does she try to do it?

A. By telling me that I had to go, it was his weekend.

Q.  And you didn't do that?

A.  No.

The child also testified on cross-examination that he did not visit with his father because he "didn't feel comfortable" with defendant's wife or at defendant's house, that defendant's wife had called him "a spoiled brat," and that the beds at defendant's house were "uncomfortable." Plaintiff's daughter testified she had never heard her mother discourage the child from visiting his father and had instead always encouraged him to go. She said her brother refused to go because he "hated it down there" at his father's home and because the child "hated" defendant's wife's son. Defendant testified he thought plaintiff should "at least make" the child go for his visitation in the same way she made the child attend school. He also testified he had never seen plaintiff tell the child he did not have to go, and on one occasion, he saw her encourage the boy and tell him he had to go. Defendant stated the child said his psychologist, Rodney Jones, had told him he did not have to go.

Nowhere in the record do we find evidence that plaintiff acted purposefully and deliberately or with knowledge and stubborn resistance to prevent defendant's visitation with the child. The evidence shows plaintiff prepared the child to go, encouraged him to visit with his father, and told him he had to go. The child simply refused. Plaintiff did everything possible short of using physical force or a threat of punishment to make the child go with his father. While perhaps the plaintiff could have used some method to physically force the child to visit his father, even if she improperly did not force the visitation, her actions do not rise to a willful contempt of the consent judgment.

Willfulness in a contempt action requires either a positive action (a "purposeful and deliberate act") in violation of a court order or a stubborn refusal to obey a court order (acting "with knowledge and stubborn resistance"). *See Dinsmore*, 36 N.C. App. at 726, 245 S.E.2d at 389. Neither are present in this case. We find no evidence that plaintiff willfully refused to allow the child to visit with the defendant. Nor do we agree with the trial court's finding that "Plaintiff's inaction in not requiring the minor child to visit with the Defendant" amounts to contempt because there is no evidence plaintiff resisted defendant's visitation or otherwise refused to obey the visitation order. She simply did not physically force the child to go. Absent any evidence she encouraged his refusal to go or attempted in any way to

prevent the visitation, her actions or inactions, even if improper, do not rise to the level of contempt.

**[3]** Defendant's frustration over not being able to have visitation with his child is certainly understandable. Where, as here, the custodial parent does not prevent visitation but takes no action to force visitation when the child refuses to go, the proper method is for the noncustodial parent to ask the court to modify the order to compel visitation. *See Mintz v. Mintz,* 64 N.C. App. 338, 307 S.E.2d 391 (1983) ("if a parent 'encounters unreasonable difficulty in exercising his visitation rights, he may apply to the trial judge, who can compel compliance with the order by making it more specific.' "). "[A] trial judge has the power to make an order forcing a child to visit the noncustodial parent." *Mintz,* 64 N.C. App. at 341, 307 S.E.2d at 394. In this case, the trial court attempted the functional equivalent of an order of forced visitation by sentencing plaintiff to jail but allowing her to purge herself of contempt by delivering the child over to defendant each and every time he was entitled to visitation. However, the order fails as an attempt at forced visitation.

> [A trial judge has the power to enter an order of forced visitation,] but only when the circumstances are so compelling and only after he has done the following: afforded to the parties a hearing in accordance with due process; created a proper court order based on findings of fact and conclusions of law determined by the judge to justify and support the order; and made findings that include at a minimum that the drastic action of incarceration of a parent is reasonably necessary for the promotion and protection of the best interest and welfare of the child.

*Mintz,* 64 N.C. App. at 341, 307 S.E.2d at 394. Neither the consent judgment nor the contempt order contains any findings that the incarceration of the plaintiff is reasonably necessary to promote and protect the best interests of the child. Because the record contains no evidence the plaintiff's actions were willful, and therefore contemptuous, and because the contempt order fails as an order compelling visitation, the trial court improperly sentenced plaintiff to thirty days in custody for violating the consent judgment by preventing visitation. This portion of the contempt order is reversed.

## II. Coin Collection

**[4]** Plaintiff next argues the trial court improperly found her in contempt for failing to return all of the coin collection to defendant.

HANCOCK v. HANCOCK

[122 N.C. App. 518 (1996)]

Plaintiff testified she turned over all of the coins she had to defendant. Both the minor child and plaintiff's daughter testified they had seen the coin collection prior to their parent's separation and that plaintiff had turned over all of the coins in the collection to defendant and had not disposed of any of the coins. Plaintiff contends the record fails to show she had the ability to return any more coins than she had already given the defendant, and therefore she cannot be held in contempt for failure to return the "complete" collection. We disagree.

The trial court found as a fact that: "The Plaintiff has failed to produce the complete coin collection as agreed in the [consent judgment]. In fact, Plaintiff produced only bits and pieces of said very valuable coin collection and has refused to produce the complete collection." As stated above, these findings of fact "are conclusive on appeal when supported by *any* competent evidence." *Clark*, 294 N.C. at 571, 243 S.E.2d at 139 (emphasis added). The record contains evidence to support this finding.

Defendant testified plaintiff gave him a paper sack which contained some, but not all, of the coins. He testified the value of the entire coin collection would be approximately two to three thousand dollars. However, defendant stated the value of the coins he received from plaintiff was only approximately ten to fifteen dollars. This evidence supports the trial court's finding of fact and is therefore binding on this Court. This is so even if the weight of the evidence might sustain findings to the contrary. *Monds v. Monds*, 46 N.C. App. 301, 304, 264 S.E.2d 750, 752 (1980). "Credibility of the witnesses is for the trial judge to determine, and findings based on competent evidence are conclusive on appeal, even if there is evidence to the contrary." *Woncik v. Woncik*, 82 N.C. App. 244, 248, 346 S.E.2d 277, 279 (1986) (citations omitted). Because the court's finding that plaintiff did not turn over the complete coin collection is based on competent evidence and supports the legal conclusion finding plaintiff in contempt of the consent judgment, under our standard of review we are bound to affirm this portion of the contempt order.[1]

---

1. We note that plaintiff has purged herself of this contempt. The order allowed plaintiff to purge the contempt by turning over the collection to defendant "or otherwise consent to a search of her residence." Plaintiff did in fact consent to this search in open court, thereby purging the contempt. Plaintiff points out in her brief that a search was conducted by deputies of the Lee County Sheriff's Department and the search found no coins. However, this information is not part of the official record and has no bearing upon our decision.

### III. Bias

**[5]** Lastly, plaintiff contends the contempt order should be reversed because of bias on the part of the trial judge. Plaintiff argues the trial judge's comments at the end of the evidence shows the judge exhibited bias and prejudice against the plaintiff in such a way that it cannot be said she had a fair trial. We disagree and allow the portion of the order holding plaintiff in contempt for failure to return the complete coin collection to stand.

After all witnesses had testified, the trial judge ordered the minor child to return to the front of the courtroom, accusing him of being "a spoiled brat" and of manipulating his mother, father, and sisters. To the plaintiff the court said:

> [Manipulation] is exactly what's going on and you don't have the common sense to see what's going on and [your daughters] probably don't have the wisdom to see. But that little boy right there, eleven and a half years old, he got [sic] all of you jumping around like a puppet on a string. No punishment when he disobeys you in terms of going. You've not punished him one bit. You've not grounded him, you've not curtailed any of his privileges and I think you've beat this man out of his coin collection . . . . I don't know what's going on in your warped mind, but it ain't right. I don't think this Methodist Minister [the defendant] would come in here and swear on the bible, get up here and tell about a valued coin collection . . . and it not be in existence.

These and other statements made by the trial judge expressed his personal opinion as well as his decision in the matter. Trial judges are not barred from expressing their opinions in trials conducted without a jury, especially where the comments are consistent with the court's role as finder of fact. *Smithwick v. Frame*, 62 N.C. App. 387, 395, 303 S.E.2d 217, 222-23 (1983). The judge's comments here, while extremely pointed, do not show a preexisting bias against plaintiff or a prejudging of her case.

The judge's comments came at the end of all of the evidence. After announcement of the order holding plaintiff in contempt, plaintiff's attorney remarked that the trial judge had "heard something I haven't heard." In reply the judge said:

> I've heard the evidence and I've watched the demeanor of the witnesses. . . . I heard [the plaintiff] from the first three questions she was asked, she wouldn't answer that question. It was a con-

PRESBYTERIAN-ORTHOPAEDIC HOSP. v. N.C. DEPT. OF HUMAN RESOURCES

[122 N.C. App. 529 (1996)]

tentiousness in her voice, contentiousness in her answers and it set the theme for the whole thing . . . .

Counsel then stated the judge had "drawn a lot of conclusions from evidence not before you." The court replied: "I didn't manufacture it, I saw it. I heard it. . . . I synthesized it, I must admit." The record shows the trial judge based his opinions and remarks upon the evidence presented at trial. Therefore, plaintiff has failed to show a personal bias or a prejudging of her case by the trial judge. *See Koufman v. Koufman*, 97 N.C. App. 227, 234, 388 S.E.2d 207, 211 (1990) *rev'd on other grounds*, 330 N.C. 93, 408 S.E.2d 729 (1991) (trial judge did not "pre-judge" plaintiff's case when stating in chambers what child support would be appropriate since he had already heard some evidence in the matter).

For the reasons stated, the portion of the order holding plaintiff in contempt for failure to comply with the visitation provisions of the consent judgment is reversed. The portion of the order holding plaintiff in contempt for failure to turn over the entire coin collection is affirmed.

Reversed in part, Affirmed in part.

Judges MARTIN, John C., and JOHN concur.