NONA DAVIS YOUNG (LINDQUIST), Plaintiff v. STEVEN PAUL YOUNG Defendant v. ALVIN YOUNG and SHARON YOUNG, Defendants-Intervenors

No. COA04-438

(Filed 15 March 2005)

**1. Child Support, Custody, and Visitation; Contempt— civil contempt—failure to comply with visitation order granting rights to grandparents**

The trial court did not err by finding plaintiff mother in willful civil contempt for failing to comply with the terms of a consent order concerning the visitation rights of her minor

daughter's paternal grandparents, because: (1) plaintiff did not dispute that the pertinent consent order granted the grandparents visitation rights and plaintiff confirmed that the grandparents had exercised their right to visitation since a 1997 order which first granted that right; (2) in a letter dated 6 May 2003, plaintiff wrote to inform the grandparents that she would not make the minor child go with the grandparents for a week in the future; (3) on 11 June 2003, plaintiff sent the grandparents another letter informing them that she was making the child unavailable for visitation by taking her to Hawaii; (4) while plaintiff knew on 1 May 2003 that she and the child would be going to Hawaii, she did not contact the grandparents about their travel plans until the day of their departure; (5) plaintiff's 11 June 2003 letter postdated the grandparents' request to make the child available for visitation beginning 13 July, as well as defendant father's motion for contempt for failure to make the child available for visitation; and (6) there was competent evidence that plaintiff willfully, i.e., knowingly and stubbornly, violated the consent order.

**2. Child Support, Custody, and Visitation— agreement between parties incorporated into order—improper limitation on authority of court**

The trial court erred by including in its order a provision based upon the parties' agreement at the hearing that precluded plaintiff mother from seeking an increase in child support from defendant father based upon an increase in defendant's income, reduction in defendant's income, or reduction in the time that defendant is allotted for summer visitation within two years, and the provision is deemed void because: (1) neither party may preclude the courts of this State from evaluating whether circumstances, which may include though may not be limited to an increase in defendant's income, warrant an increase in support; (2) an increase in defendant's income may properly be considered as a factor in determining whether support should be increased and the courts of this State cannot be precluded from protecting a child's best interest; (3) the provision precluding plaintiff from seeking an increase based upon a reduction in defendant's income is superfluous as a decrease in a support payor's income may warrant a decrease and not an increase in support; and (4) while a reduction in visitation may constitute a changed circumstance warranting a support modification, the

YOUNG v. YOUNG

[169 N.C. App. 31 (2005)]

courts cannot sua sponte modify support, and courts cannot be precluded from protecting a child's best interest.

3. **Child Support, Custody, and Visitation— equal access to records of minor child**

The trial court did not err in a child support and visitation case by including in its order matters that were allegedly not before the court, including the parties' agreement that plaintiff mother share with defendant father all school and medical records of the minor child and copies of all school records, that defendant be notified prior to medical appointments of the child unless it is an emergency, that the parties inform one another of the physical address where they reside and a current telephone number, and that plaintiff provide defendant with copies of all order forms for defendant to purchase school pictures of the child, because those portions of the order were within the purview of the provision of N.C.G.S. § 50-13.2(b) stating that "each parent shall have equal access to the records of the minor child involving the health, education, and welfare of the child."

4. **Appeal and Error— preservation of issues—clerical errors—failure to object**

The trial court did not err in a child support and visitation case by omitting from its order matters that were addressed before the court such as the partial omission of the time of day when the minor child would be picked up for visitation, because: (1) nothing indicated that plaintiff objected to this omission or made any motion to add the visitation pick-up time to the order prior to its entry, and in fact plaintiff through her attorney approved the form and signed off on the order; (2) N.C.G.S. § 1A-1, Rule 60 addresses clerical mistakes and provides that trial courts may correct mistakes or omissions even during the pendency of an appeal either before the appeal is docketed or thereafter with leave of the appellate division, and nothing indicated that plaintiff petitioned the trial court to correct the order during the pendency of this appeal; and (3) plaintiff's failure to object or make any motion to add the visitation pick-up time to the order, as well as her explicit approval of what she now contends is a clerical error, means plaintiff failed to preserve this issue for appeal.

Judge TYSON concurring in part and dissenting in part.

YOUNG v. YOUNG

[169 N.C. App. 31 (2005)]

Appeal by Plaintiff from order entered 8 October 2003 by Judge Dougald N. Clark, Jr. in District Court, Cumberland County. Heard in the Court of Appeals 7 December 2004.

*Dale S. Morrison, for plaintiff-appellant.*

*Mitchell, Brewer, Richardson, Adams, Burge & Boughman, by Ronnie M. Mitchell and H. Lee Boughman, Jr., for defendant-appellee.*

*Sullivan & Grace, P.A., Nancy L. Grace, for defendant-intervenor-appellees.*

WYNN, Judge.

Plaintiff, Nona Davis Young Lindquist, asserts in this appeal that the trial court erred by: (1) finding her in willful civil contempt for failing to comply with the terms of a Consent Order concerning the visitation rights of her minor daughter's paternal grandparents, Alvin and Sharon Young; (2) precluding her from seeking an increase in child support from the child's father, Steven Paul Young, based upon certain conditions; (3) including in its order matters not before the court; and (4) omitting from its order matters addressed before the court. After careful review, we affirm in part and vacate in part the order of the trial court.

The underlying facts tend to show that following their divorce in 1999, Lindquist and Young consented to an Order entered in Cumberland County, North Carolina providing for joint custody of their daughter, Shaughnessy, with primary custody to Lindquist. The Order entitled Young to six weeks of visitation with Shaughnessy every summer and granted the paternal grandparents, who live in Minnesota, one week of visitation per year. Lindquist eventually moved with Shaughnessy to Ohio, where she works as a teacher.

On 6 May 2003, Lindquist wrote letters to Young and the grandparents, informing them that Shaughnessy did not wish to visit with them for any extended period of time and that Lindquist was therefore not going to make Shaughnessy visit with them. The record on appeal shows that a few days earlier, on 1 May 2003, Lindquist learned that she had been selected for a summer teaching position in Hawaii. According to her own testimony, on 11 June 2003, the day of Shaughnessy's and her departure for Hawaii, Lindquist sent letters to Young and the grandparents regarding their impending travels to

Hawaii.[1] Lindquist's letter postdated Young's motion for contempt for Lindquist's failure to make Shaughnessy available for visitation and the grandparents' request for visitation to begin 13 July 2003.

On 28 July 2003, the trial court held a hearing on the contempt motions. During the hearing, Lindquist reached an agreement with Young to dismiss his contempt motion. There was no such resolution with the grandparents, whose motion was granted by the trial court. Lindquist appeals from that order.

I.

**[1]** On appeal, Lindquist first asserts that the trial court erred in holding that she was in willful civil contempt for failing to comply with the terms of the Consent Order concerning the grandparents' visitation rights. We disagree.

"In contempt proceedings the judge's findings of fact are conclusive on appeal when supported by any competent evidence and are reviewable only for the purpose of passing on their sufficiency to warrant the judgment." *Clark v. Clark*, 294 N.C. 554, 571, 243 S.E.2d 129, 139 (1978). Under North Carolina law,

Failure to comply with an order of a court is a continuing civil contempt as long as:

(1)   The order remains in force;

(2)   The purpose of the order may still be served by compliance with the order;

(2a)  The noncompliance by the person to whom the order is directed is willful; and

(3)   The person to whom the order is directed is able to comply with the order or is able to take reasonable measures that would enable the person to comply with the order.

N.C. Gen. Stat. § 5A-21(a) (2003). Our courts define willful as with "knowledge and a stubborn resistance." *Mauney v. Mauney*, 268 N.C. 254, 268, 150 S.E.2d 391, 393 (1966); *Clayton v. Clayton*, 54 N.C. App. 612, 615, 284 S.E.2d 125, 127 (1981) (stating that "willfully implies that

---

1. We note that, while Lindquist's letters are dated 9 June 2003, no postmark is provided and Lindquist testified that "I sent them a letter on June 11th."

the act was done knowingly and of stubborn purpose."). Willfulness implicates "more than deliberation or conscious choice; it also imports a bad faith disregard for authority and the law." *Forte v. Forte*, 65 N.C. App. 615, 616, 309 S.E.2d 729, 730 (1983).

Here, the trial court made the findings required for contempt:

8. On the 22nd day of September, 1999, a Consent Order was entered by this Court, [by] the terms of which, [the paternal grandparents] were granted visitation privileges with the minor child for seven days during [] each summer upon thirty days advance notice and that said Order is still in force and effect and the purpose of said Order may still be served by compliance with the same.

\* \* \*

17. That Plaintiff has had the ability to comply with the visitation Order involving [the paternal grandparents] but has willfully failed and refused to do so.

The record reveals that competent evidence supported these findings. At the 28 July 2003 hearing, Lindquist did not dispute that the Consent Order granting the grandparents visitation rights was in effect. Indeed, Lindquist confirmed that the grandparents had exercised their right to visitation since a 1997 order, which first granted that right, took effect. Nevertheless, in a letter dated 6 May 2003, Lindquist wrote "to inform" the grandparents that she "will not make Shaughnessy go with you for a week in the future." On 11 June 2003, Lindquist sent the grandparents another letter, informing them that she was making Shaughnessy unavailable for visitation by taking her to Hawaii. While Lindquist knew on 1 May 2003 that she and Shaughnessy would be going to Hawaii, she did not contact the grandparents about their travel plans until the day of their departure. Moreover, Lindquist's 11 June 2003 letter postdated the grandparents' request to make Shaughnessy available for visitation beginning 13 July, as well as Young's motion for contempt for failure to make Shaughnessy available for visitation. These and other facts reflected in the record constitute competent evidence to support the trial court's finding that Lindquist was in willful civil contempt for failing to allow Shaughnessy's grandparents to exercise their visitation rights.

Lindquist relies heavily on *Hancock v. Hancock*, 122 N.C. App. 518, 471 S.E.2d 415 (1996), and *Ruth v. Ruth*, 158 N.C. App. 123, 579 S.E.2d 909 (2003), to support her argument that the trial court erred in finding her in contempt. These cases are, however, easily distinguishable. In *Hancock*, we found that:

> Nowhere in the record do we find evidence that plaintiff acted purposefully and deliberately or with knowledge and stubborn resistance to prevent defendant's visitation with the child. The evidence shows plaintiff prepared the child to go, encouraged him to visit with his father, and told him he had to go. The child simply refused. Plaintiff did everything possible short of using physical force or a threat of punishment to make the child go with his father.

*Hancock*, 122 N.C. App. at 525, 471 S.E.2d at 419. The same cannot be said here, where there is competent evidence, discussed above, supporting the trial court's conclusion that Lindquist willfully, *i.e.*, knowingly and stubbornly, violated the Consent Order granting the grandparents visitation rights.

In *Ruth*, we reversed a finding of contempt where the alleged contemnor fully complied with the relevant court order prior to the hearing on the motion to show cause regarding contempt. We held that "a district court does not have the authority to impose civil contempt after an individual has complied with a court order, even if the compliance occurs after the party is served with a motion to show cause why he should not be held in contempt of court." *Ruth*, 158 N.C. App. at 126, 579 S.E.2d at 912 (citation omitted). Here, in contrast, the grandparents had not yet had their visitation, and Lindquist was not in compliance with the prior court order, at the time of the hearing. *Ruth* is therefore also inapplicable.

Accordingly, we uphold the trial court's finding that Lindquist was in willful civil contempt for failing to allow Shaughnessy's grandparents to exercise their visitation rights.

## II.

[2] Lindquist next contends that the trial court erred by including in its order a provision to which she and Young had agreed at the hearing: that Lindquist "will not file a motion to increase child support based upon an increase in [Young's] income, reduction in [Young's]

income or reduction in the time that [Young] is allotted for summer visitation within two years."[2] We agree.[3]

Under North Carolina General Statute section 50-13.7(a), "[a]n order of a court of this State for support of a minor child may be modified or vacated at any time, upon motion in the cause and a showing of changed circumstances." N.C. Gen. Stat. § 50-13.7(a) (2003); *Crutchley v. Crutchley*, 306 N.C. 518, 524-25, 293 S.E.2d 793, 797-98 (1982) ("[A] court order pertaining to custody or support of a minor child . . . may be modified or vacated at any time, upon motion in the cause and a showing of changed circumstances[.]") (quotation and citations omitted). A court may not *sua sponte* modify an existing support order; modification may occur only upon motion and a showing of changed circumstances by an interested party. *Royall v. Sawyer*, 120 N.C. App. 880, 882, 463 S.E.2d 578, 579-80 (1995).

Increased income alone does not constitute changed circumstances. Indeed, "[i]t is well established that an increase in child support is improper if based solely upon the ground that the support payor's income has *increased.*" *Thomas v. Thomas*, 134 N.C. App. 591, 594, 518 S.E.2d 513, 515 (1999) (citing *Greer v. Greer*, 101 N.C. App. 351, 355, 399 S.E.2d 399, 402 (1991) (stating that "[w]ithout evidence of any change of circumstances affecting the welfare of the child or an increase in need . . . an increase for support based solely on the ground that the support payor's income has increased is improper"); *Fuchs v. Fuchs*, 260 N.C. 635, 133 S.E.2d 487 (1963) (holding that an increase in support was not warranted in the absence of evidence of changed circumstances, particularly where the increase was sought solely on the ground that the payor's income had increased)). Because an increase in child support may not be based solely on an increase in the payor's income, were Lindquist to file a motion to increase Young's support obligation solely because of an increase in Young's income, such motion would necessarily fail. The provision at issue is therefore superfluous under these circumstances.

2. Additionally, at the hearing, Lindquist and Young verbally agreed that Lindquist would be precluded from seeking an increase in Young's support obligation were Lindquist's income to decrease. Because this provision was not included in the written court order being appealed, we refrain from addressing it.

3. The dissent argues that Lindquist's appeal of this issue is not yet ripe, as she has not filed a motion to modify child support. Were Lindquist to make such a motion under the circumstances prohibited by the order, Lindquist would be in violation of the court order and open herself up to further contempt proceedings. *See, e.g.,* N.C. Gen. Stat. § 5A-21(a) ("Failure to comply with an order of a court is a continuing [] contempt . . . ."). We therefore find this argument unpersuasive.

YOUNG v. YOUNG

[169 N.C. App. 31 (2005)]

However, a non-custodial parent's increased income is properly considered as a factor in determining whether changed circumstances warranting an increase in child support exist. *See, e.g.,* *Gibson v. Gibson,* 24 N.C. App. 520, 523, 211 S.E.2d 522, 524 (1975) (an increase in support was properly justified by a showing of increased support costs and substantially increased spendable income of the payor); *Roberts v. Roberts,* 38 N.C. App. 295, 301-02, 248 S.E.2d 85, 89 (1978) (non-custodial parent's ability to pay support, as well as custodial parent's inability to provide "an adequate standard of living[]" for herself and the child, were properly considered as factors in determining support obligations); *cf. Thomas,* 134 N.C. App. at 596, 518 S.E.2d at 516-17 (where the sole ground cited for increased support was an increase in the payor's income, the case was remanded to the trial court for further findings as to whether any change in the children's needs or circumstances affecting their welfare existed).

Neither Lindquist nor Young may preclude the courts of this State from evaluating whether circumstances, which may include (though may not be limited to) an increase in Young's income, warranting an increase in support exist. Indeed,

[N]o agreement or contract between husband and wife will serve to deprive the courts of their . . . authority to protect the interests and provide for the welfare of [children]. They may bind themselves by a separation agreement or by a consent judgment, but they cannot thus withdraw children . . . from the protective custody of the court.

*Griffin v. Griffin,* 96 N.C. App. 324, 328, 385 S.E.2d 526, 529 (1989) (quoting *Fuchs,* 260 N.C. at 639, 133 S.E.2d at 491; citing *Voss v. Summerfield,* 77 N.C. App. 839, 840, 336 S.E.2d 144, 145 (1985)); *see also Story v. Story,* 221 N.C. 114, 116, 19 S.E.2d 136, 137 (1942) ("[P]arents cannot contract away the jurisdiction of the court which is always alert in the discharge of its duty toward its wards—the children of the State whose personal or property interests require protection." (citation omitted)). Because an increase in Young's income may properly be considered as a factor in determining whether support should be increased, and because the courts of this State cannot be precluded from protecting a child's best interest yet cannot *sua sponte* modify support (*Royall,* 120 N.C. App. at 882, 463 S.E.2d at 579-80), the provision barring Lindquist from bringing a motion to increase Young's support obligation based in part on Young's increased ability to pay is void.

The provision also precludes Lindquist from seeking an increase in Young's support obligation in the event of a reduction in Young's income. This is, however, superfluous, as a decrease in a support payor's income may warrant a *decrease*, not an increase, in support. This Court has routinely held that decreased income may constitute changed circumstances warranting a reduction in support. *See, e.g., Hammill v. Cusack*, 118 N.C. App. 82, 453 S.E.2d 539 (1995) (finding no error where trial court decreased support based on involuntary decrease in payor's income despite no change in children's needs); *McGee v. McGee*, 118 N.C. App. 19, 27, 453 S.E.2d 531, 536 (1995) ("[I]t now appears settled that a significant involuntary decrease in a child support obligor's income satisfies the necessary showing" of changed circumstances to decrease a support obligation.); *O'Neal v. Wynn*, 64 N.C. App. 149, 151-53, 306 S.E.2d 822, 823-24 (1983), *aff'd*, 310 N.C. 621, 313 S.E.2d 159 (1984) (determination of changed circumstances and reduction of child support affirmed absent change in child's needs where payor's income decreased as a result of job loss and borrowing money to start a new business); *Schroader v. Schroader*, 120 N.C. App. 790, 794, 463 S.E.2d 790, 793 (1995) ("[A] voluntary decrease in income, absent a finding of bad faith, may be considered to support a finding of changed circumstances.").

Finally, the provision precludes Lindquist from seeking an increase in Young's support obligation in the event of a reduction in the time that Young is allotted for summer visitation. Our Supreme Court has held that "[v]isitation privileges are but a lesser degree of custody[]" and thus encompassed by the term custody for purposes of North Carolina General Statute section 50-13.7 regarding modification of orders for child support or custody. *Clark*, 294 N.C. at 575-76, 243 S.E.2d at 142; *Lamond v. Mahoney*, 159 N.C. App. 400, 402-03, 583 S.E.2d 656, 658 (2003) ("[B]ecause visitation privileges are but a lesser degree of custody, we must apply the same principles to visitation [] that apply to custody[]." (quotation omitted)). This Court has held that a change in custody may constitute a changed circumstance supporting modification of support obligations. *Kowalick v. Kowalick*, 129 N.C. App. 781, 787, 501 S.E.2d 671, 675 (1998) ("In this case, the trial court properly found that the change in [the child's] custody constituted a changed circumstance supporting modification of Defendant's child support obligation."). This makes sense, given that a reduction in non-custodial visitation from, for example, six weeks to one week per year would increase the custodial parent's time, and likely related costs, of care by nearly ten percent annually.

YOUNG v. YOUNG

[169 N.C. App. 31 (2005)]

Because a reduction in visitation may constitute a changed circumstance warranting a support modification, and because the courts of this State cannot *sua sponte* modify support (*Royall*, 120 N.C. App. at 882, 463 S.E.2d at 579-80), yet cannot be precluded from protecting a child's best interest (*Griffin*, 96 N.C. App. at 328, 385 S.E.2d at 529), the provision barring Lindquist from bringing a motion to increase Young's support obligation based in part on a reduction in Young's visitation is void.[4]

In sum, because the provision precluding Lindquist from moving for an increase in Young's support obligation under certain circumstances for at least a two-year period is superfluous under certain of the specified conditions and void under the others, we hold the entire provision to be void.

### III.

**[3]** Lindquist next asserts that the trial court erred by including in its order matters not before the court. Specifically, Lindquist contends that she and Young reached an agreement that served as the basis for the trial court's order, and the trial court exceeded its authority by providing further relief not contemplated by the parties. She therefore challenges that part of the trial court order requiring that (1) Lindquist share with Young "all school and medical records of the minor child" and "copies of all school records[;]" (2) Young be "notif[ied] . . . prior to medical appointment[s] of the minor child unless it is an emergency[;]" (3) Young and Lindquist "inform [one another] of [each other's] physical address where they reside and a current telephone number; if either of these numbers should change the party must notify the other within 72 hours of the change[;]" and (4) Lindquist "provide Defendant copies of all order forms for Defendant to purchase school pictures of the minor child."

---

4. We are familiar with the case law indicating that support and visitation may not be tied to one another. Those cases, however, are inapplicable, as they hold that payment of support, awarded for the child's welfare, may not be made conditional upon the custodial parent's compliance with visitation. This is not at issue here. *See, e.g., Appert v. Appert*, 80 N.C. App. 27, 40, 341 S.E.2d 342, 349 (1986) (holding that "conditioning the payment or receipt of child support upon compliance with an order granting the noncustodial parent visitation privileges as a means of enforcing the visitation order is inherently detrimental to the best interest of the minor child and is therefore contrary to the law"); *Sowers v. Toliver*, 150 N.C. App. 114, 118, 562 S.E.2d 593, 595-96 (2002) (stating that "[t]he duty to provide financial support is independent of visitation rights and one may not be made contingent upon the other" and that "child support is guided by concern for the best interests of the child and not by a desire to punish a disobedient parent[]" and holding that the court's terminating child support where the custodial parent was in contempt regarding visitation was therefore an abuse of discretion).

North Carolina General Statute section 50-13.2(b) states that "each parent shall have equal access to the records of the minor child involving the health, education, and welfare of the child." N.C. Gen. Stat. § 50-13.2(b) (2003). The order provisions Lindquist challenges are well within the purview of the statute.

The only North Carolina case Lindquist cites to support her argument is *Elrod v. Elrod*, 125 N.C. App. 407, 481 S.E.2d 108 (1997), which is easily distinguishable. In *Elrod*, the trial court entered an order permitting home schooling of the children conditioned on the mother allowing the father visitation. On appeal, this Court held that the trial court did not have the authority to condition the right of home schooling on compliance with visitation because the initial custody order did not limit the education of the children. *Elrod*, 125 N.C. App. at 411, 481 S.E.2d at 111. Here, in contrast, the trial court in no way limited the parties' control of Shaughnessy's education, health, and welfare, nor did it condition aspects of Shaughnessy's education on Young's visitation. Instead, the trial court ordered the sharing of information about Shaughnessy's education, health, and welfare, to which both parents have a right.

### IV.

[4] Finally, Lindquist contends that the trial court erred in omitting from its order matters that were addressed before the court. The only example Lindquist identifies is the trial court's partial omission of the time of day when Shaughnessy would be picked up for visitation—an alleged error even Lindquist admits is merely "clerical."

Nothing before this Court indicates that Lindquist objected to this omission or made any motion to add the visitation pick-up time to the order prior to its entry. In fact, Lindquist, through her attorney, read, *approved as to form*, and signed off on the order. Moreover, contrary to Lindquist's assertion that, upon her filing a notice of appeal, the trial court lacked authority to correct the error, North Carolina General Statute section 1A-1, Rule 60(a), addressing clerical mistakes, makes plain that trial courts may correct mistakes or omissions even during the pendency of an appeal, either before the appeal is docketed in the appellate division or thereafter with leave of the appellate division. N.C. Gen. Stat. § 1A-1, Rule 60 (2003); *Sink v. Easter*, 288 N.C. 183, 199, 217 S.E.2d 532, 542 (1975) ("Rule 60(a) specifically permits the trial court to correct clerical mistakes before the appeal is docketed in the appellate court, and thereafter while the appeal is pending with leave of the appellate court[.]"). Nothing

before this Court indicates that Lindquist petitioned the trial court to correct the order during the pendency of this appeal. Because Lindquist apparently at no time objected or made any motion to add the visitation pick-up time to the order, and because the record indicates that Lindquist explicitly approved what she now contends is a clerical error, she has not preserved this issue for appeal. N.C. R. App. P. 10(b) ("In order to preserve a question for appellate review, a party must have presented to the trial court a timely request, objection or motion[.]").

For the reasons stated herein, we affirm the order of the trial court, except the provision therein precluding Lindquist from bringing a motion for an increase in Young's support obligation, which is vacated.

Affirmed in part, vacated in part.

Judge McGEE concurs.

Judge TYSON concurs in part and dissents in part.

TYSON, Judge concurring in part, dissenting in part.

I concur with the majority's opinion to the extent it: (1) affirms the trial court's order finding plaintiff in willful contempt; (2) affirms the trial court's decision to order the parties to share information regarding Shaughnessy; and (3) dismisses plaintiff's argument relating to omissions in the trial court's order. I disagree with the holding in the majority's opinion that the provision precluding Lindquist from moving for an increase in Young's support obligation under certain circumstances for a two-year period to be void. I respectfully dissent.

## I. Untimely Appeal

Young argues Lindquist's appeal of whether the provision was appropriately placed in the trial court's Order is not properly before this Court because Lindquist is not yet aggrieved to warrant such appeal. I agree.

Our appellate courts have long recognized the rule that:

Only a party aggrieved may appeal. G.S. 1-271; *Rubber Co. v. Tire Co.*, 270 N.C. 50, 153 S.E.2d 737 (1967); *Coburn v. Timber Corp.*, 260 N.C. 173, 132 S.E.2d 340 (1963); *Langley v. Gore*, 242 N.C.

302, 87 S.E.2d 519 (1955). The scope of review by an appellate court is usually limited to a consideration of the assignments of error in the record on appeal and it is well established that if the appealing party has no right to appeal the appellate court should dismiss the appeal *ex mero motu*. *Bailey v. Gooding*, 301 N.C. 205, 270 S.E.2d 431 (1980); *see also* Rules of Appellate Procedure, Rule 10(a). When a party fails to raise an appealable issue, the appellate court will generally not raise it for that party. *Henderson v. Matthews*, 290 N.C. 87, 224 S.E.2d 612 (1976).

*Harris v. Harris*, 307 N.C. 684, 690, 300 S.E.2d 369, 373-74 (1983). "No appeal lies from a judgment until somebody is hurt or 'aggrieved' by it." *Yadkin County et. al. v. City of High Point et. al.*, 219 N.C. 94, 95, 13 S.E.2d 71, 72 (1941) (citing C.S., 632).

Here, the challenged provision is prospective in nature, was not adjudicated, and has not affected the rights of either party, or Shaughnessy, at this stage. Until Lindquist moves for a modification in child support and the trial court denies her motion based on the challenged provision, she is not "a party aggrieved." *See* N.C. Gen. Stat. § 1-271 (2003). This assignment of error is not properly before this Court and should be dismissed.

## II.  Waiver

In addition to this issue not being properly before our Court, Lindquist waived any rights to challenge the provision. At trial, Lindquist's attorney stated:

> My client will allow her child to miss three days of school in order for that child to visit . . . In addition, in return for that, your Honor, that will resolve the issue of the complainant's motion to modify visitation. It will resolve the issue at this time of the motion to modify child support. And the plaintiff will agree she will not file a motion to modify child support based on either an increased income or a reduction in the time that [defendant] is allotted for his summer visitation within two years, based on those two grounds, solely on those two grounds.

In addition, once the findings of fact were entered, including the challenged provisions, Lindquist's attorney signed the order acknowledged he "read [it] and approved [it] as to form." Lindquist now attempts to assign error to portions of the order she consented to during trial.

Rule 10 of the North Carolina Rules of Appellate Procedure provide:

> In order to preserve a question for appellate review, a party must have presented to the trial court a timely request, objection or motion, stating the specific grounds for the ruling the party desired the court to make if the specific grounds were not apparent from the context. . . . Any such question which was properly preserved . . . may be made the basis of an assignment of error in the record on appeal.

N.C.R. App. P. 10(b)(1) (2004). "The Rules of Appellate Procedure are mandatory. They are designed to keep the process of perfecting an appeal flowing in an orderly manner." *Craver v. Craver*, 298 N.C. 231, 236, 258 S.E.2d 357, 361 (1979) (citation omitted).

Although Lindquist has assigned error to the provisions, she: (1) failed to make any objection before the trial court; (2) agreed to the order; and (3) waived any right to challenge the order. Her assignment of error was not "properly preserved," which precludes our review. N.C.R. App. P. 10(b)(1). This assignment of error should be dismissed.

### III. Conclusion

I concur with sections one, three, and four of the majority's opinion and agree with its reasoning and resolution of Lindquist's assignments of error addressed in those sections.

I disagree with the majority's decision to reach the merits of Lindquist's assignments of error in section two. The majority's opinion reverses the trial court without addressing the ripeness of Lindquist's appeal, or her waiver by failing to object and her consent to the order prior to entry. Further, the majority's opinion correctly states that the trial court "is without authority to *sua sponte* modify an existing support order." *Royall v. Sawyer*, 120 N.C. App. 880, 882, 463 S.E.2d 578, 579-80 (1995). The majority's decision to address this issue contradicts our appellate rules, which are mandatory. I respectfully dissent.