DILLON, Judge.
 

 Joseph A. McKinney, Jr., ("Father") appeals from two orders of the district court entered during the course of a dispute between Father and Ginger A. McKinney (Sutphin) ("Mother") regarding the custody of their adolescent son, Max.
 
 [1]
 
 Specifically, Father appeals (1) the district court's September 2015 order finding him in civil and criminal contempt (the "Contempt Order"), and (2) the district court's March 2016 order (the "Fee Award Order") denying his motion for relief from judgment or new trial and awarding attorney's fees to Mother.
 

 *282
 
 I. Background
 

 Mother and Father separated in 2002 when Max was two years old. For a period of time, the parties shared custody of Max. In 2009, when Max was ten years old, the parties entered into a consent order (the "2009 Custody Order") which awarded primary physical custody of Max to Mother and provided a specific schedule for Father's visitation.
 

 In early 2014, Max expressed a strong desire to move from Greensboro, where he resided with Mother, to live with Father in Wilmington. In May 2014, Father filed a motion to modify custody with the district court.
 

 In June 2014, before Father's motion to modify custody was heard, Max left Greensboro on his own and traveled to Wilmington to stay with Father. In July 2014, the parties entered into a consent order (the "2014 Consent Order") providing that Max would return to Greensboro.
 

 However, in August 2014, Max again traveled on his own to Wilmington, staying for approximately one month with Father and attending high school in Wilmington. Mother then filed the second show cause motion based on Father's failure to return Max to Greensboro.
 

 A hearing was held during the week of 8 September 2014 during which the district court orally rendered its decision, finding Father in criminal
 
 and
 
 civil contempt for failure to comply with the 2009 Custody Order and the 2014 Consent Order.
 

 On 13 September 2014, Max returned to live with Mother in Greensboro.
 

 On 25 September 2014, the district court entered a written order (the "Contempt Order"), reducing its prior oral decision finding Father in civil and criminal contempt to writing.
 

 In December 2014, the district court entered an order on Father's custody modification motion, awarding Father primary physical custody of Max.
 

 On 22 March 2016, the district court entered the Fee Award Order awarding Mother approximately $51,100 for attorney's fees she incurred in prosecuting her contempt motion.
 

 II. Analysis
 

 Father appeals the Contempt Order finding him in civil and criminal contempt and the Fee Award Order awarding Mother $51,100.
 

 Regarding the Contempt Order, we dismiss the appeal with respect to the portion finding Father in
 
 criminal
 
 contempt because that appeal must first be taken to superior court. Further, we vacate the Contempt Order to the extent that the district court found Father in
 
 civil
 
 contempt based on the fact that Father had already returned Max prior to the entry of the Order, thus satisfying the "purge" language.
 

 Regarding the Fee Award Order, we dismiss the appeal to the extent the award is based on the criminal contempt finding. We reverse and remand to the extent the award is based on the civil contempt finding. We address our holdings in greater detail below.
 

 A. Contempt Order
 

 1. Criminal Contempt
 

 In its Contempt Order, the district court found Father in criminal contempt for "failure to communicate with [ ] Mother" in August 2014 when Max ran away to Wilmington for the second time. The district court sentenced Father to thirty (30) days in jail, but suspended the sentence for twelve (12) months based on certain conditions.
 
 [2]
 

 In support of its order of criminal contempt, the district court essentially found that (1) Max ran away to Wilmington on 13 August 2014 after Max had a disagreement
 
 *283
 
 with Mother; (2) Mother sent text messages to Father regarding Max's welfare; (3) Father did not respond to Mother's inquiries until 17 August 2014; (4) Father's failure to respond to Mother violated a provision in the 2009 Custody Order that "[t]he parties shall confer with each other on all important matters pertaining to the health, welfare, education, and upbringing of the minor child with a view to arriving at a harmonious policy calculated to promote the best interest of the minor child"; and (5) Father's violation was willful, deliberate, and stubborn.
 

 Our Supreme Court held in a
 
 per curiam
 
 opinion adopting a dissent from our Court that a finding of criminal contempt by the district court should be appealed to superior court and
 
 not
 
 to the Court of Appeals.
 
 Reynolds v. Reynolds
 
 ,
 
 356 N.C. 287
 
 ,
 
 569 S.E.2d 645
 
 (2002) ;
 
 see also
 

 Hancock v. Hancock
 
 ,
 
 122 N.C.App. 518
 
 , 522,
 
 471 S.E.2d 415
 
 , 417 (1996) ("Criminal contempt orders are properly appealed from district court to the superior court, not to the Court of Appeals."). And our General Assembly has directed that an "appeal from a finding of contempt by a judicial official inferior to a superior court judge is by hearing
 
 de novo
 
 before a superior court judge." N.C. Gen. Stat. § 5A-17 (2015). Accordingly, we conclude that Father's appeal of that portion of the Contempt Order finding him in criminal contempt is not properly before us.
 
 [3]
 
 Therefore, we dismiss this portion of Father's appeal.
 

 2. Civil Contempt
 

 On 10 September 2014, the district court rendered its oral order finding Father in civil contempt for "failing to return the child pursuant to the [2009 Custody Order] and the [2014 Consent Order]." On 13 September, before the district court entered its written Contempt order, Max returned to live with Mother in Greensboro. On 25 September, the district court entered the written Contempt Order finding Father in civil contempt and stating that Father could "purge himself of contempt by having [Max] delivered to the Plaintiff Mother[.]"
 

 Our Court has held that a district court "does not have the authority to impose civil contempt after an individual has complied with a court order, even if the compliance occurs after the party is served with a motion to show cause why he should not be held in contempt of court."
 
 Ruth v. Ruth
 
 ,
 
 158 N.C.App. 123
 
 , 126,
 
 579 S.E.2d 909
 
 , 912 (2003).
 

 Here, the district court's order became effective on 25 September when the district court reduced its order to writing and the order was filed with the clerk.
 
 See
 
 N.C. R. Civ. P., Rule 58 ("[A] judgment is entered when it is reduced to writing, signed by the judge, and filed with the clerk of court.");
 
 see also
 

 Olson v. McMillian
 
 ,
 
 144 N.C.App. 615
 
 , 619,
 
 548 S.E.2d 571
 
 , 574 (2001) ("When a trial court's oral order is not reduced to writing, it is non-existent[.]" (internal marks omitted)). Because Father had already returned Max to Mother prior to 25 September, the district court lacked the authority to find Father in civil contempt for failing to return Max. Therefore, we vacate the Contempt Order to the extent the district court found Father in civil contempt.
 

 B. Fee Award Order
 

 In March 2016, the district court ordered Father to pay Mother $51,100 for attorneys' fees incurred in connection with Mother's prosecution of the Contempt Order. To the extent that the Fee Award Order relates to the finding of criminal contempt, we dismiss the appeal. The appeal of the criminal contempt order and related issues lies with the superior court as part of that court's review of the criminal contempt finding.
 

 We conclude, though, that Father's appeal of the portion of the Fee Award Order relating to the civil contempt finding is properly before us. We note that we have vacated the district court's finding that Father was in civil contempt based on the fact that he purged himself of contempt prior to the Contempt Order being entered. However, our Court has held that the moving party may still recover attorneys' fees even if the other
 
 *284
 
 party has purged himself prior to the entry of an order finding him in civil contempt:
 

 As a general rule, attorney's fees in a civil contempt action are not available unless the moving party prevails. Nonetheless, in the limited situation where contempt fails because the alleged contemnor complies with the previous orders after the motion to show cause is issued and prior to the contempt hearing, an award of attorney's fees is proper.
 

 Ruth
 
 ,
 
 158 N.C.App. at 127
 
 ,
 
 579 S.E.2d at 912
 
 .
 

 Here, the district court found Father in civil contempt for his failure to comply with the 2009 Custody Order and the 2014 Consent Order based on Max running away to live with Father for approximately a month in August 2014. The district court's findings suggest, in part, that Max ran away from Mother on his own and arrived at Father's house in Wilmington on 14 August; Father lives a wealthy lifestyle and Max likes the way he lives when he is with him. The district court further found that Father never told Max to run away from Mother; and Father "enticed" Max to stay with him because of Father's lifestyle. We hold that several of the findings made by the district court in support of its civil contempt order are erroneous.
 

 For instance, the district court found that "[t]here was
 
 no evidence
 
 presented that the Defendant Father instructed [Max] that he had to abide by the [custody orders]." However, Father stated several times during his testimony that he told Max that Max needed to go back home to Mother. The district court also found that "[t]here was
 
 no evidence
 
 presented that the Defendant Father secured transportation after August 13, 2014, and told the child to get in the car or plane." But Father did state that he was willing to provide transportation but that Max was simply not willing to go. It was certainly within the district court's discretion to find that Father's testimony was not credible, but the district court did not state that "there was no
 
 credible
 
 evidence...." Therefore, these findings are not supported by the evidence.
 

 Further, much of the district court's reasoning in finding Father in civil contempt runs contra to our decision in
 
 Hancock v. Hancock
 
 ,
 
 122 N.C.App. 518
 
 ,
 
 471 S.E.2d 415
 
 (1996). In
 
 Hancock
 
 , we held that a parent was not in civil contempt of a custody order where the mother encouraged her ten-year old child to go on scheduled visits with the father, that she did not force the child to stay or discourage the child from going with the father, that the child refused to go, and that the mother otherwise did not use physical force or a threat of punishment to make the child go with the father.
 

 Id.
 

 at 525
 
 ,
 
 471 S.E.2d at 419
 
 . Based on these findings, we reversed an order finding the mother in civil contempt, stating as follows:
 

 We find no evidence that [the mother] willfully refused to allow the child to visit with the [father]. Nor do we agree with the trial court's finding that "[the mother's] inaction in not requiring the minor child to visit with [the father] amounts to contempt because there is no evidence [the mother] resisted [the father's]" visitation or otherwise refused to obey the visitation order. She simply did not physically force the child to go. Absent any evidence she encouraged [the child's] refusal to go or attempted in any way to prevent the visitation, her actions or inactions, even if improper, do not rise to the level of contempt.
 

 Id.
 

 at 525-26
 
 ,
 
 471 S.E.2d at 420-21
 
 .
 

 In the present case, the district court made no finding that Father refused to allow Max to live with Mother or refused to obey the custody orders. The district court did not find that Father encouraged Max to stay with him, but rather, found that he told Max that Max should go home. It is true that the district court found that Father did not punish Max or make life uncomfortable for Max while remaining in Wilmington. And these actions and inactions may have been improper, but otherwise do not rise to the level of contempt.
 
 See
 
 id.
 

 We do not think that the findings that Father provided a high standard of living for Max which was an "enticement" for Max to prefer living with Father is enough to rise to the level of willfulness, absent a finding supported by the evidence that Father provided a high standard of living
 
 for the purpose
 
 of enticing Max to run away from Mother rather than merely for
 
 *285
 
 the purpose of providing for or bonding with Max.
 

 Accordingly, we reverse the district court's order awarding attorney's fees incurred in relation to the civil contempt finding. On remand, the district court is free to consider evidence and enter findings regarding whether Father acted willfully in refusing to allow Max to visit with Mother.
 

 III. Conclusion
 

 We dismiss the appeal from the finding of criminal contempt and dismiss the appeal from the portion of the Fee Award Order relating to the finding of criminal contempt. We vacate the finding of civil contempt and reverse the portion of the Fee Award Order relating to the finding of civil contempt. This matter is remanded for action consistent with this opinion.
 

 DISMISSED IN PART, VACATED IN PART, AND REMANDED.
 

 Judges ELMORE and ZACHARY concur.
 

 [1]
 

 A pseudonym.
 

 [2]
 

 We note that the district court provided as one of the conditions of the suspended sentence that "the remaining balance of the sentence can be purged upon the return of custody to the Plaintiff Mother at any time prior to the time the full 30-day sentence has been served." This condition is the type that would be more appropriate for a finding of
 
 civil
 
 contempt. However, we conclude that the district court's finding of contempt was criminal in nature based on other conditions that the district court imposed. The district court imposed the sentence as a means to
 
 punish
 
 Father for what it determined to be a violation of the 2009 Custody Order that occurred from August 13-17, when Father failed to communicate with Mother.
 

 [3]
 

 It appears from the record that Father did, in fact, appeal the criminal contempt order to superior court on 15 September 2014. However, the record does
 
 not
 
 include any documentation of the outcome of that appeal and Father has not appealed from any order of the superior court.